Argued May 7, decided July 20, 1909.

## STATE *v.* PARR.

[103 Pac. 434.]

ROBBERY—INDICTMENT AND INFORMATION—INDICTMENT—ASSAULT WITH INTENT TO ROB.

1. Section 1768, B. & C. Comp., provides that "If any person, being armed with a dangerous weapon, shall assault another, with intent, if resisted, to kill or wound the person assaulted," and shall rob or take from the person assaulted any money which may be the subject of larceny, such person, upon conviction thereof, shall be punished. 1 B. & C. Comp., p. 750, prescribes as a form of indictment for an assault with intent to kill if resisted that "being armed with a dangerous weapon did commit an assault upon one C. D. with intent, if resisted, to kill or wound the said C. D., and then and there feloniously took," etc, Section 1306, B. & C. Comp., declares that an indictment must be direct and certain as regards the particular circumstances of the crime charged when necessary to constitute a complete crime, and Section 1305 provides that the manner of stating the act constituting the crime as set forth in the appendix to the Code is sufficient in the cases where the forms there given are applicable. *Held* that, in charging an assault and robbery with intent, if resisted, to kill or wound, it is unnecessary after charging that defendants were "armed with dangerous weapons, to wit: pistols," to allege that the pistols were then and there loaded with gunpowder and bullets, as the language of an indictment need not correspond with the form suggested or with the words of a statute, unless the expression used in the form is necessary to the validity of the accusation, and the descriptive phrase in the indictment, "to wit: pistols," was properly rejected as surplusage, and an averment that the money taken from the prosecuting witness was taken against his will is also unnecessary.

ROBBERY—EVIDENCE—"PRESUMPTION" AND BURDEN OF PROOF.

2. Under Section 784, B. & C. Comp., defining a presumption as a deduction from particular facts, it will be presumed that, when an assault with intent to commit robbery is made by placing the muzzle of a pistol at or near the body of a person from whom money or property is expected to be taken by force, the weapon so employed is loaded with powder and ball, and is a dangerous weapon, and imposes upon the person accused, if he admit the use of the pistol, the burden of proving it was not so charged.

ROBBERY—ADMISSIBILITY OF EVIDENCE.

3. In a prosecution for robbery, where no theory of the cause is advanced by defendant that would render material a plan or diagram of the

interior of the jail in which defendants were incarcerated, a refusal to admit such a diagram is not error.

ROBBERY—TRIAL—INSTRUCTIONS.

4. In a prosecution for robbery and assault with intent to kill if resisted, an instruction that if the jury find from the evidence beyond reasonable doubt that defendants, or either of them, are guilty of stealing from the person of the prosecuting witness the sum described in the indictment or some part thereof, but do not find that they or either of them assaulted said witness with intent, if resisted, to kill or wound said witness, then they should find the defendants or either of them guilty of the crime of larceny from the person, is not erroneous, as robbery is larceny aggravated by the circumstance that the property taken is taken from the person of another by violence or by putting him in fear, and the greater crime necessarily embraces the lesser offense of the same class.

CRIMINAL LAW—GROUNDS FOR NEW TRIAL.

5. After conviction of defendants on the charge of robbery and assault with intent to kill, if resisted, one of the defendants filed an affidavit in support of a motion for a new trial that since the trial affiant has learned that F. took from the prosecuting witness the money specified in the indictment, and that affiant had been informed that, if a new trial was granted, F. would make a full confession completely exonerating affiant from any participation in the crime. A third person was charged in the indictment as "John Doe" with having participated in the crime, and there was nothing to show that F. was not "John Doe." An affidavit by the other defendant was filed stating that he saw F. take the money from the prosecuting witness, but that he did not tell any person thereof until after the trial. There was also evidence that on the day of the robbery, F. had money in his possession similar to that taken from the prosecuting witness. *Held,* that the showing was not sufficient to warrant a new trial.

From Umatilla: HENRY J. BEAN, Judge.

The defendants, Joseph Parr and Samuel Gaston, were indicted, tried and convicted of assault and robbery, being armed with dangerous weapons, and from the judgment and sentence which followed, they appeal.    AFFIRMED.

For appellant there was a brief over the names of *Mr. Will M. Peterson* and *Messrs. Carter & Smythe,* with an oral argument by *Mr. Peterson.*

For respondent there was a brief and an oral argument by *Mr. Gilbert W. Phelps,* District Attorney.

Opinion by MR. CHIEF JUSTICE MOORE.

1. The defendants, Joseph Parr and Samuel Gaston, were, with another party, jointly charged with the crime of assault and robbery while being armed with dangerous weapons, "to wit: pistols." The crime was alleged to

have been committed as follows: "The said Joseph Parr, Samuel Gaston, and John Doe, acting together on the 3d day of November, A. D. 1908, in the county of Umatilla and state of Oregon, then and there being and acting together, did then and there with intent, if resisted, to kill or wound one Peter Willox, assault him, the said Peter Willox, they the said Joseph Parr, Samuel Gaston and John Doe so acting together being then and there armed with dangerous weapons, to wit: pistols, and they, the said Joseph Parr, Samuel Gaston, and John Doe so acting together, did then and there unlawfully and feloniously rob, steal and take from the person of him, the said Peter Willox, sixty dollars, gold coin, being three twenty dollar gold pieces, each of the value of twenty dollars, lawful money of the United States, the personal property of him, the said Peter Willox, said money being so stolen and taken at the time of said assault and while Joseph Parr, Samuel Gaston, and John Doe were so armed with such dangerous weapons as aforesaid, contrary to the statute in such cases made and provided and against the peace and dignity of the State of Oregon." Parr and Gaston were jointly tried; and, having been found guilty as charged, they appeal from the judgment which followed. Their counsel contend that because the indictment did not allege that the pistols were then and there "loaded with gunpowder and lead bullets," or aver that the money was taken from the prosecuting witness, "and against his will," the written accusation was insufficient, and that the demurrer which called attention to these defects was erroneously overruled. The statute asserted thus to have been violated is as follows:

"If any person being armed with a dangerous weapon shall assault another with intent, if resisted, to kill or wound the person assaulted, and shall rob, steal, or take from the person assaulted any money or other property which may be the subject of larceny, such person, upon conviction thereof, shall be punished," etc.: Section 1768, B. & C. Comp.

The indictment herein follows the express wording of the enactment on which it is based, but enlarges upon the language quoted by averring in the phrase, "to wit: pistols," the kind of dangerous weapons with which the defendants were armed when the assault and robbery were committed. The model prescribed for that part of an indictment which charges a transgression of the statute hereinbefore set forth is as follows: "Being armed with a dangerous weapon, did commit an assault upon one C. D., with intent, if resisted, to kill or wound the said C. D., and then and there feloniously took a gold watch (or as the case may be) from the person of the said C. D., and against his will": Forms of indictment No. 10, 1 B. & C. Comp. p. 750. In the model thus recommended it will be observed that the phrase "and against his will" is employed. In preparing the written accusation in the case at bar the district attorney did not attempt to follow the form appointed, but patterned the formal charge after the statute: Section 1768, B. & C. Comp. That enactment contains a statement of all the essential elements of robbery required by the rules of the common law, except a provision that the personal property taken was that of the person who was assaulted; and this averment, though not required when the form prescribed is used (*State* v. *Dilley,* 15 Or. 70: 13 Pac. 648; *State* v. *Eddy,* 46 Or. 625: 81 Pac. 941: 82 Pac. 707), appears in the indictment herein. The language employed in an indictment need not correspond with the pattern suggested, or with the words of a statute, unless the expression used in the formal charge is necessary to the validity of the accusation: 22 Cyc. 340. Thus a text-writer, discussing the subject of robbery, observes: "It is not essential to charge the taking as 'against the will' if the larceny is otherwise sufficiently charged": 1 McClain, Criminal Law, § 480. To the same effect, see, also, 2 Bishop, New Criminal Procedure, § 1006, sub. 2; Clark & Marshall, Law of Crimes (2 ed.), § 377.

In the case at bar the larceny from the person of Peter Willox is sufficiently charged; and, this being so, the failure to aver in the indictment "and against his will" did not render the written accusation ineffectual: *People v. Riley*, 75 Cal. 98 (16 Pac. 544) ; *State v. La Chall*, 28 Utah, 80 (77 Pac. 3). From an inspection of the form of an indictment as hereinbefore set forth, it is manifest that the character of the dangerous weapon with which the party charged was armed is not specified. The allegation that a person accused of an assault and robbery was armed with a dangerous weapon, without designating its kind, does not violate a provision of our statute which declares that the indictment must be direct and certain, as it regards the particular circumstances of the crime charged when they are necessary to constitute a complete crime: Section 1306, B. & C. Comp. The statute contains the further provision, to wit: "The manner of stating the act constituting the crime, as set forth in the appendix to this code, is sufficient in all cases where the forms there given are applicable": Section 1305, B. & C. Comp. As form No. 10 hereinbefore quoted, does not specify the kind of weapon used, it is therefore unnecessary to aver its character in an indictment: *Burton v. State*, 3 Tex. App. 408 (30 Am. Rep. 146). To prove whether or not the weapon was dangerous evidence of its kind and character is rendered admissible by the mere statement in the written accusation that the assault was committed by a person who was then and there armed with a dangerous weapon. Although the designating in the indictment before us of the dangerous weapon as, "to wit: pistols," may individualize them, such specification was not necessarily descriptive of the offense; and the qualifying clause was properly rejected as surplusage: *State v. Horne*, 20 Or. 485 (26 Pac. 665) ; *State v. Lee*, 33 Or. 506 (56 Pac. 415) ; *State v. Humphreys*, 43 Or. 44 (70 Pac. 824). The indictment being sufficient, no error was committed in overruling the demurrer.

2. It is insisted by defendants' counsel that an error
was committed in charging the jury as follows: "I
instruct you that a revolver or a pistol loaded with powder
and ball is a dangerous weapon." The testimony given
by the witnesses who appeared for the state tended to
show that on November 3, 1908, Willox was in a saloon
at Pendleton with others drinking "near" beer; that, after
several bottles of such refreshment had been consumed
and paid for by others, some more of the malt liquor
was brought to the tables at which people were sitting
and Willox was requested to pay therefor, but he refused
because he had not ordered the beverage; that in conse-
quence of such refusal a dispute arose, and to settle the
difficulty amicably one of the men present offered to
loan Willox a dollar with which to pay for the drinks, but
he declined the offer, saying that he had with him suffi-
cient money for his needs, at the same time taking from
his pocket and exhibiting a few gold and some silver
coins. Willox testified that immediately after the con-
troversy mentioned he went to a toilet at the rear of the
saloon, when, upon turning around, the defendants
pointed revolvers in his face and ordered him to throw
up his hands, which command he obeyed, whereupon the
money was taken from his pocket by the third man whom
he did not know, and he was told to "go on." These
incriminating statements were severally denied by the
defendants, who, as witnesses in their own behalf, testi-
fied that after the difficulty which arose over the refusal
of Willox to pay for the beer he did not go to the rear of
the saloon, but went immediately out at the front thereof.
The guns described by Willox, and with which he asserts
the assault was made upon him, not having been used
as bludgeons, cannot be designated as dangerous weapons
unless they were loaded with powder and balls, as speci-
fied in that part of the charge to which reference has
been made. No direct evidence was offered at the trial

that the revolvers were so loaded, and hence, if any
proof on that subject was considered by the jury, it arose
from invoking a presumption to that effect.    A presump-
tion is a deduction which the law expressly directs to be
made from particular facts: Section 784, B. & C. Comp.
Conclusions which the jury are thus authorized to draw
from the proof of distinct incidents are based upon gen-
eral knowledge of the ordinary course of events or upon
the usual conduct of persons under certain circumstances
and conditions.    Thus self-preservation is a well-recog-
nized rule governing human conduct, and, when the duty
is imposed upon a person who is about to cross a railroad
track at a public crossing to look and listen for the
approach of a train, if his body be found at or near such
crossing and bear evidence that he was killed by contact
with the cars, contributory negligence will not be imputed
to him if *sui juris,* but, until the contrary is shown, the
presumption will be invoked that he did his duty:
*McBride* v. *N. P. R. Co.* 19 Or. 64 (23 Pac. 814).    So,
too, a person contemplating the commission of robbery
by the aid of a pistol to compel obedience to his command
of "Hold up your hands" expects to defend himself by
such means if necessary; and, in order to effect that pur-
pose, such weapon must be loaded with gunpowder and
bullets.    When an assault, with an intent to commit rob-
bery, is made by placing the muzzle of a pistol at or near
the body of a person from whom money or property is
expected to be taken by force, the law will presume that
the gun so employed was loaded in the manner indicated;
and hence it was a dangerous weapon, thereby imposing
upon the party accused, if he admit the use of the pistol,
the burden of proving that it was not so charged: *State*
v. *Herron,* 12 Mont. 230 (29 Pac. 819: 33 Am. St. Rep.
576) ; *Lipscomb* v. *State,* 13 Wis. 238 (109 N. W. 986) ;
*Crow* v. *State,* 41 Tex. 468.    It would be very difficult
for a person who had been robbed when a gun was pointed
at him to testify with any degree of certainty that the

weapon with which the assault was made was then loaded with gunpowder and bullets. In the excitement incident to the commission of a robbery, the victim is not expected to take careful note of the condition of the gun which is used to intimidate him, in order to determine whether or not the weapon is loaded. The reasons thus assigned justify the rule of law which invokes the presumption that a pistol so used was loaded with powder and ball; and, in the absence of any evidence to the contrary, authorized the trial court to instruct the jury that a gun so charged was a dangerous weapon.

3. Bert Wilson, a deputy sheriff, who had charge of the prison where the defendants were confined, testified that about a month prior to their trial Willox, in company with Thomas Gurdane, the chief of police of Pendleton, came to the place where they were detained; that the witness and such visitors walked around on the inside of the jail about ten minutes; and that Willox identified Parr, but failed to recognize Gaston. On cross-examination Wilson was directed to explain the style of the jail, whereupon he stated: "There is a six-foot corridor running entirely around the inside cells." He was then asked to "take a piece of cardboard and make a diagram of that so the jury will understand." An objection to such command having been sustained, and an exception allowed, it is urged by defendants' counsel that an error was thereby committed. Attention has not been called to any theory of the case that would render material a plan or diagram of the interior of the jail in which the defendants were incarcerated, and the record has been searched in vain to discover any valid reason why Wilson should have complied with the request. Hence we conclude that no error was committed in this respect.

4. An exception having been taken to the following part of the charge, it is argued by defendants' counsel that the court erred in giving it, to wit: "I instruct you that if, in this case you find from the evidence beyond a

reasonable doubt that the defendants or either of them
are guilty of stealing from the person of Peter Willox
the sum of money described in the indictment, or some
part thereof, but do not so find that the defendants, or
either of them, assaulted said Willox with intent, if
resisted, to kill or wound said Willox, then you should
find the defendants, or either of them that you find so
guilty, of the crime of larceny from the person." Rob-
bery is larceny aggravated by the circumstance that the
property asportated was taken from the person of
another by violence or by putting him in fear: Clark &
Marshall, Law of Crimes, § 370. As the greater crime
necessarily embraces the lesser offense of the same class,
no error was committed in charging the jury as last
herein specified: 2 Cur. Law, 1524; 18 Enc. Pl. & Pr. 1233.

5. It is contended by defendants' counsel that an error
was also committed in refusing to set aside the verdict
and to grant a new trial. In support of the motion so
overruled, Parr filed his affidavit to the effect that since
the trial he had learned that Charles Flush took from
Willox the money specified in the indictment, $20 of which
was given to Gaston, and that the affiant had been
informed that, if a new trial were granted, Flush would
make a full confession completely exonerating him from
any participation in the commission of the crime charged.
So far as disclosed by the affidavits, the third person
named in the indictment as "John Doe" may have been
the Charles Flush referred to and a party to the commis-
sion of the crime. Gaston's affidavit states that he saw
Flush stealthily take the money from Willox, but that he
did not tell any person thereof until after the trial herein.
Also Frances Smith's sworn declaration shows that on
the day of the alleged robbery Flush exhibited to her two
twenty-dollar gold pieces.

We do not think the showing thus made was sufficient
to have authorized the court to set aside the verdict and
to grant a new trial. The jury evidently believed from

the testimony offered that the defendants were parties who participated in the taking of the money in the manner alleged. The verdict indicates such conclusions, and, as a fair trial was had, the judgment is affirmed.

AFFIRMED.

---

Decided April 11, rehearing denied July 27, 1909.