Argued December 20, 1927, affirmed January 10, 1928, motion to recall mandate and retax costs denied April 3, 1928.

## STATE *v.* STEPHEN RAGAN ET AL.

### (262 Pac. 954.)

**Criminal Law—Counsel's Opening Statement is Subject to Trial Judge's Discretion.**

1. Counsel's opening statement to the jury is subject to the discretion of the trial judge.

**Criminal Law—Trial Judge's Exercise of Discretion Relative to Opening Statement will not be Reviewed Unless Abused.**

2. Exercise of discretion by trial judge relative to counsel's opening statement to jury will not be reviewed on appeal unless abused.

**Criminal Law—Court, and not Counsel, Should State Law Governing Case.**

3. The law governing case should be stated to the jury by judge of court, and not by counsel.

**Criminal Law—Trial Judge's Refusal to Allow Jury to have Information Concerning Penalty is not Error.**

4. Refusal of trial judge to allow jury to have information concerning penalty attached to crime with which defendant was charged did not constitute error.

**Criminal Law—Exclusion of Pictures in Newspaper in Attempt to Impeach Witness Identifying Defendant Held Harmless, Under Circumstances.**

5. In prosecution for assault and robbery, exclusion of pictures of defendant published in newspaper in attempt to impeach witness identifying defendant *held* harmless, where defendant's counsel repeatedly got such pictures before jury irrespective of ruling thereon.

**Witnesses—Court Properly Permitted State to Call Official Reporter at Previous Trial to Read Notes Impeaching Defendant's Wife Testifying in His Behalf.**

6. Where defendant's wife in testifying in his behalf stated that she had never remonstrated with husband concerning his activities as a highwayman, court properly permitted state, after defendant had rested, to call court official reporting her testimony at a previous

---

1. Limitations which may be imposed upon argument of counsel, see note in 46 Am. St. Rep. 23. See, also, 2 R. C. L. 406.

2. Restricting argument of counsel in criminal case as constituting reversible error, see notes in 2 Ann. Cas. 435; Ann. Cas. 1917A, 718.

3. Right of counsel to argue questions of law or read law to the jury, see note in 1 Am. St. Rep. 54.

6. Contradicting witness by previous testimony, depositions or writings, see note in 82 Am. St. Rep. 46. See, also, 28 R. C. L. 633.

trial and to read portion of notes wherein she testified that she had remonstrated with husband concerning his banditry.

**Criminal Law—In Absence of Exceptional Circumstances, State Should Put in All Its Case in Chief Before Requiring Defendant to Offer Defensive Matter.**

7. Fair play and orderly court procedure require that state put in all of its case in chief before defendant is required to offer defensive matter, though occasionally exceptional circumstances arise warranting a departure from such rule.

**Criminal Law—Permitting State Witness to Testify in Rebuttal Held not Erroneous Where Testimony, Except for Two General Answers, was Rebuttal Evidence.**

8. Where testimony by state witness on rebuttal was, with exception of two answers, very general in nature and already covered by other evidence, failure to require calling of such witness in chief rather than in rebuttal *held* not erroneous.

**Witnesses—Refusal to Permit Defendant's Wife, Testifying in His Behalf, to Testify After Her Impeachment Held not Reversible Error Under Circumstances.**

9. Where defendant's wife, testifying in his behalf, had been impeached by introduction of testimony given by her at another trial, refusal to permit her to thereafter testify in such manner as would show that original statement could not have been true *held* not reversible error, though she should have been permitted to answer question.

**Witnesses—Impeached Witness Should be Afforded Opportunity to Overcome Discrediting Matter.**

10. An impeached witness should be afforded an opportunity to testify to any explanatory matter which may lessen or remove discrediting effect of impeachment.

**Criminal Law—Court Properly Permitted Deputy District Attorney in Opening Argument to Read Stenographic Notes Used by Official Reporter in Impeaching Witness.**

11. Where questions and answers given at trial of another case had been read in evidence by official reporter for purpose of impeaching defendant's witness, court properly permitted deputy district attorney in opening argument to jury to read stenographic notes used by reporter when giving such testimony, since such questions and answers became evidence by reason of reporter's testimony.

**Criminal Law—Instruction Requiring Corroborating Circumstances Establishing Identity to Produce, With Other Testimony, Degree of Certainty in Mind of Jury Held Properly Refused.**

12. In prosecution for assault and robbery, being armed with a dangerous weapon, instruction requiring that corroborating cir-

---

7. See 2 R. C. L. 216; 26 R. C. L. 1041.

9. Re-establishment of credit of witness after evidence of contradictory statements, see note in 41 L. R. A. (N. S.) 905. See, also, 28 R. C. L. 647. Admissibility of prior consistent statements by witness after proof of prior inconsistent statements, see notes in 8 Ann. Cas. 477; Ann. Cas. 1915A, 512.

cumstances tending to establish identity must be such as, with other testimony, produced degree of certainty in mind of jury *held* properly refused as misleading.

**Robbery—Instruction That Law Presumes Pistol or Revolver, Employed in Assault, was Loaded Held Erroneous.**

13.   In prosecution for assault and robbery, being armed with a dangerous weapon, instruction to effect that law presumes a pistol or revolver, employed intentionally and unlawfully in assault, was loaded *held* erroneous.

**Criminal Law—State has Burden of Satisfying Jury Beyond Reasonable Doubt.**

14.   State always has burden of ultimately satisfying jury beyond a reasonable doubt of the truth of its contentions.

**Criminal Law—Supreme Court will Direct Judgment of Conviction Supported by Record, Though Error in Charge Requires Reversal of Judgment of Lower Court (Const., Art. VII, § 3c).**

15.   Under Constitution, Article VII, Section 3c, authorizing Supreme Court to direct entry of judgment if able to determine what judgment should have been entered, judgment of assault with intent to rob, described in Section 1919, Or. L., will be directed on appeal when supported by record, notwithstanding instruction in prosecution for assault and robbery, being armed with dangerous weapon, erroneously stated that law presumes pistol or revolver used in assault was loaded.

---

Assault and Battery, 5 C. J., p. 778, n. 48, p. 791, n. 24.
Criminal Law, 16 C. J., p. 529, n. 40, p. 869, n. 46, 47, p. 889, n. 41, New, 42, p. 890, n. 51, 52, p. 977, n. 53.   17 C. J., p. 244, n. 63, p. 247, n. 82, p. 322, n. 51, p. 333, n. 95, p. 366, n. 61.
Judges, 33 C. J., p. 960, n. 70 New, 73.
Witnesses, 40 Cyc., p. 2687, n. 93, p. 2748, n. 97, p. 2751, n. 22, p. 2754, n. 52, p. 2755, n. 56.

From Multnomah: WILLIAM A. EKWALL, Judge.

Department 1.

Defendant appeals from the judgment of the Circuit Court convicting him of the crime of assault and robbery, being armed with a dangerous weapon.

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. O. W. Eastham.*

For respondent there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr.*

*Stanley Myers,* District Attorney, with an oral argument by *Mr. Lyle F. Brown,* Deputy District Attorney.

ROSSMAN, J.—1-4. The first assignment of error is based upon the ruling of the court which denied counsel for the defendant leave to read from the statute books the penalty provided for the crime with which defendant was charged. Counsel's opening statement is subject to the discretion of the trial judge. The latter's duties are not solely judicial; they are also administrative. In the latter capacity he finds himself as the superintendent of a staff composed of attorneys, witnesses, jurors, clerks, court reporters and others comprising the personnel of the court. The expeditious transaction of judicial business depends largely upon the manner in which the trial judge discharges these administrative duties. The opening statement is an administrative function performed by counsel, designed to enable the jury to understand the evidence which is about to follow. The trial judge may in his discretion supervise the opening statement so that it will serve the purpose which the law intended. The exercise of his discretion will not be reviewed upon appeal unless abused. In addition, the law governing the case should be stated to the jury by the judge of the court and not by counsel, and finally in *State* v. *Daley,* 54 Or. 514 (103 Pac. 502, 104 Pac. 1), this court applied the rule adhered to in many of the other states, that no error is committed by the trial judge when he refuses to allow the jury to have information concerning the penalty attached to the crime with which the defendant is charged. We find no reason to depart from the law thus stated.

The second assignment of error is based upon the ruling of the court which refused defendant leave to introduce in evidence a copy of the "Oregon Journal," a Portland newspaper; it contained the defendant's picture. This ruling was made when one B. F. Alshee, the victim of the crime, was upon the stand. On direct examination he had testified that he identified the defendant at the police station March 6th as one of the two men who had committed the crime. On cross-examination he testified that March 5th a picture of the defendant appeared in the "Oregon Journal," but the witness testified that his identification was made from the impression of the defendant left upon the witness' mind at the time of the robbery and not from seeing the picture in the newspaper. He testified that when he saw the pictures in the paper he did not recognize them as the men who had robbed him. Thereupon the defendant offered in evidence the newspaper; he stated his purpose as:

"I am now offering in evidence that copy of the Journal, the Journal of that date, carrying the pictures of these defendants as evidence that this man on the 6th of March identified Ragan and Ford; I am offering now this copy of the Oregon Journal in evidence for that purpose."

5. The court ruled: "You can ask him if he identified him from memory, newspaper, or what, but you cannot introduce the newspaper." Thereupon defendant's counsel asked the court: "Can't I ask him if he saw their pictures on the Journal on the 5th of March?" to which the court replied in the affirmative. The newspaper was made a part of the record and we have it before us. The pictures of the two men are of the ordinary type that commonly appear in news-

papers. Of course, the entire newspaper was not admissible, but dealing only with the pictures we fail to understand how they could have shown that the witness made his identification from them, and not from his recollections, especially when we bear in mind that he had testified that when he saw the pictures, before going to the police station, he did not recall those as the faces of the men who had robbed him. But even if the pictures were admissible, no harm resulted to the defendant from their exclusion. The record discloses that defendant's counsel repeatedly got the pictures before the jury; thus upon one of these occasions the court admonished him:

"The Court: Now, just a minute. I told you once, Mr. Eastham, that you couldn't do that. Now, don't do that any more. Just leave the paper down where it is, and whenever I have ruled on anything, please don't go contrary to that. You have held that paper up now two or three times and showed it, and I have told you that you couldn't do it. Now, please don't do it again."

No error was committed.

The fourth assignment of error relates to a matter which under our disposition of the second assignment of error becomes immaterial.

6. The fifth assignment of error is based upon the testimony of Mr. Alva W. Person. Violet Ragan had testified in the defendant's behalf; upon cross-examination she stated she had never remonstrated with her husband, this defendant, concerning his activities as a highwayman. Thereupon counsel for the state called her attention to the time, place and other identifying circumstances of another trial wherein she testified; she was then asked if she did not at that time testify that she had remonstrated against his

criminal activities; to these questions she replied in the negative. After the defendant had rested, the state called Mr. Person, the court official who reported her testimony. The court permitted him to read that portion of his notes wherein she testified that she had remonstrated with her husband concerning his banditry every time when he returned after an act of outlawry; this was not error. It was not necessary that Mr. Person should have read all of Mrs. Ragan's testimony upon the previous trial; the impeaching part only was material, nor was it necessary that he should have been asked the questions put and the answers given. He in fact read each question put and answer given upon the other trial; hence the result would have been the same.

7, 8. In his sixth assignment of error defendant complains because the court permitted R. A. Ripley, witness for the state, to testify in rebuttal; defendant's contention is that the witness should have been called in chief. Every consideration of fair play and of orderly court procedure demands that the state should put in all its case in chief before the defendant is required to offer his defensive matter. Occasionally in the transaction of judicial business, exceptional circumstances arise which warrant a departure from this rule. When such circumstances arise an application should be made to the trial judge for leave to depart from the rule; no such application was made in this case. We have carefully read the testimony of the witness Ripley. Except for two very short answers, all of the testimony given by him was rebuttal evidence; these two answers were general in nature and had already been covered fully by other witnesses. We believe this did not constitute reversible error.

In his seventh assignment of error defendant contends that the court erred when it refused Violet Ragan leave to explain her testimony given in the other trial to the effect that after each of defendant's acts of banditry, she had protested to him against a continuance by him of such activities. As we have seen she was asked by the state upon cross-examination whether she had remonstrated with the defendant; this she denied; and as we have further seen after time, place and the other identifying circumstances were related to her, she again denied having testified previously to his acts of banditry. We have also stated that then Mr. Person was called and read from his stenographic notes, her testimony in the other trial, wherein she related the several occasions upon which she remonstrated with her husband against his banditry. Thus she had been impeached and the effect of it might well cause the jury to discredit the statements she had made as a witness in this case. In an attempt to rehabilitate her credit as a witness, the defendant might well have endeavored to show that in either or both cases, through nervousness or forgetfulness, she failed to accurately relate to the jury the matters concerning which she gave testimony, or that Mr. Person's notes were inaccurate. But the defendant made no endeavor to do so. Without in any way undertaking to show that she had not made the statements contained in Mr. Person's notes, the defendant called her and proposed to show by her:

"that all the statements made by her with reference to these crimes of violence were made on March 5th, the day after her husband's arrest and in the conversation with him at that time, and that no such matters were discussed by the defendant and Violet Ragan at any time prior to March 5th, 1927."

9, 10. According to Mr. Person's stenographic notes, she testified in the other trial that she protested with the defendant each time when he returned from one of his criminal escapades. No effort was made to show that Mr. Person's records were inaccurate, or that she had not been a witness in the preceding trial, or that she had not given the testimony related by Mr. Person. Had the court permitted her to testify to the matter contained in the offer of proof, her original statement would still remain to the effect that she never discussed the defendant's acts of banditry with him, and Mr. Person's testimony would remain unimpaired to the effect that in a previous trial she said that she had discussed these matters with him many times. Her testimony, if given, would have showed that after the arrest she discussed the matter with the defendant. The logical effect of this would be to discredit her as a witness; for it would show that her original statement could not be true. Either her recollection was inaccurate, or her capacity to impart to the jury the impressions in her memory was at fault. Nevertheless the court should have permitted the witness to answer the question. An impeached witness should be afforded an opportunity to testify to any explanatory matter which may lessen or remove the discrediting effect of the impeachment. But we do not believe that its failure to do so constituted reversible error for the reasons that follow. On direct examination she testified that upon the morning in question, defendant did not take his gun with him, that he went out seeking employment and did not possess a sheepskin coat. We shall subsequently dispose of the gun matter in a manner which eliminates it from the case entirely. Manifestly she could not

know what he did after leaving her eyesight, and the state's witness was uncertain whether defendant wore a sheep skin coat; hence the court's failure to permit her to make this explanation was not reversible error.

11. In his eighth assignment of error defendant contends that the court erred when it permitted the deputy district attorney, in his opening argument to the jury, to read the brief stenographic notes which had been used by Mr. Person when he gave his testimony. It is true that these were the questions and answers given in the trial of another case, but Mr. Person's testimony made them evidence in this case. Defendant calls our attention to *Western Tube Co.* v. *Polobinski*, 94 Ill. App. 647. That case does not support the defendant's contentions, but very nicely shows that the proceedings permitted by the court below did not constitute error. Thus the court said:

"As we understand the statement in the bill of exceptions, what counsel was then proposing to read was not the transcript of the testimony given at this trial, but a transcript of the testimony on a former trial of this cause. We are confirmed in this conclusion by what is said about it by counsel for appellant in their brief. If counsel had proposed to read from a transcript prepared by the official reporter, of the testimony given at this trial as to what was sworn to on the former trial, we see no reason why counsel should not have been allowed to read from such transcript."

Whether counsel is employing any unfair tactics in his argument rests largely in the sound discretion of the trial judge. We find no abuse of the trial court's discretion.

We come now to the assignments of error based upon the instructions of the court. We have reviewed all of the instructions requested and not given; we

find no error here.   One of the requested instructions is the following:

"So far as regards the question of identity of the defendant the court instructs the jury that if they believe, from the evidence and the circumstances proved, that there is reasonable doubt whether the witness might not be mistaken as to their identity, then before the jury would be authorized to convict the prisoner and corroborating circumstances tending to establish his identity must be such as, with other testimony, produces a degree of certainty in the mind of the jury so great that they can say and feel that they have no reasonable doubt as to the identity of the defendant."

12. This requested instruction was taken from Sackett's Forms on Instructions to Juries.   Mr. Sackett cites no authority which has sustained the use of this form.   We believe that it was not error to refuse to give this requested instruction.   It is difficult to understand the statement embodied within it.   It could readily lead the jury to believe that if a witness who has testified to identity should be sustained with creditable corroborating circumstances it would be necessary to accompany this proof "with other testimony" before the jury would be authorized to believe it.   No error was committed when the court refused this requested instruction.

13. But the court clearly erred when it instructed the jury:

"The law presumes that a pistol or revolver employed intentionally and unlawfully in an assault was loaded, and it would be incumbent upon a defendant, if he admitted that he was present at the scene of the crime, or if he admitted that he had a revolver or pistol, it would then be incumbent upon him to prove to your satisfaction beyond a reasonable doubt

that the revolver or pistol was not loaded, if that question was one to be determined by the jury."

This instruction was very likely founded in part upon the words employed in *State* v. *Parr,* 54 Or. 316 (103 Pac. 434), wherein this court stated:

"So, too, a person contemplating the commission of robbery by the aid of a pistol to compel obedience to his command of 'Hold up your hands' expects to defend himself by such means if necessary; and, in order to effect that purpose, such weapon must be loaded with gunpowder and bullets. When an assault, with an intent to commit robbery, is made by placing the muzzle of a pistol at or near the body of a person from whom money or property is expected to be taken by force, the law will presume that the gun so employed was loaded in the manner indicated; and hence it was a dangerous weapon, thereby imposing upon the party accused, if he admit the use of the pistol, the burden of proving that it was not so charged: *State* v. *Herron,* 12 Mont. 230 (29 Pac. 819, 33 Am. St. Rep. 576); *Lipscomb* v. *State,* 130 Wis. 238 (109 N. W. 986); *Crow* v. *State,* 41 Tex. 468. It would be very difficult for a person who had been robbed when a gun was pointed at him to testify with any degree of certainty that the weapon with which the assault was made was then loaded with gunpowder and bullets. In the excitement incident to the commission of a robbery, the victim is not expected to take careful note of the condition of the gun which is used to intimidate him, in order to determine whether or not the weapon is loaded. The reasons thus assigned justify the rule of law which invokes the presumption that a pistol so used was loaded with powder and ball; and, in the absence of any evidence to the contrary, authorized the trial court to instruct the jury that a gun so charged was a dangerous weapon."

14. Unfortunately the word "presumption" was used where the word "inference" would have been

proper. In other words, under the circumstances disclosed in *State* v. *Parr* and in the case now before us, a jury would be warranted in drawing an inference that the weapon was loaded with powder and ball. But we are aware of no decision which casts upon the defendant the burden of overcoming this inference beyond a reasonable doubt; this portion of the instruction was clearly erroneous. The state always has the burden of ultimately satisfying the jury beyond a reasonable doubt of the truth of its contentions.

15. There being present the foregoing error, we do not believe that a reversal and a new trial is the only remedy for the situation. In order to save the expense, delay and inconvenience of starting anew the ponderous machinery of a new trial, whenever error crept into the record, the voters of this state in 1910 amended the state Constitution so that it now provides that if the Supreme Court shall be of opinion, after consideration of all the matters submitted to it, that it can determine what judgment should have been entered in the court below, it may direct such judgment to be entered: Art. VII, § 3c, Or. Const. We have read all of the testimony and are thoroughly satisfied that the jury was well warranted in its verdict upon all phases of the case concerning which no error was committed. The jury thus found that the defendant committed an act of assault and an act of robbery. He testified upon the direct examination by his own attorney to a long series of criminal escapades, including burglary, which brought him a term in the Sing Sing penitentiary; he also testified to an act of desertion from the United States army, for which he was punished by confinement for one year at Governor's Island. His marriage to his wife, a girl of fifteen years, was preceded with a criminal

charge, and later incarceration of himself in the county jail and the girl in the Fraser Home in Portland. The foregoing is but a portion of his criminal record.

In view of the fact that there is no error in that portion of the record which discloses that the defendant committed an assault, and robbed the complaining witness, the Circuit Court of Multnomah County is ordered to enter a judgment convicting the defendant of assault with intent to rob, as described in Section 1919, Or. L., and to sentence him to an appropriate penalty.                              AFFIRMED.

RAND, C. J., and COSHOW and McBRIDE, JJ., concur.