Argued June 26, affirmed July 17, 1928.

STATE *v.* H. J. MILO ET AL.

(269 Pac. 225.)

For appellant there was a brief and oral argument by *Mr. O. W. Eastman.*

For respondent there was a brief over the names of *Mr. Stanley Myers,* District Attorney, and *Mr. Francis R. Wade,* Deputy District Attorney, with an oral argument by *Mr. Wade.*

BROWN, J.—The defendant was jointly indicted with one James Kelly and a third person whose name was to the grand jury unknown and who is designated as ''John Doe.'' The indictment accused these defendants of being armed with a loaded revolver, and of assaulting A. W. Blackburn with that revolver by pointing it at him, he, the said Blackburn, being then and there within shooting distance. Kelly was convicted upon his plea of guilty in open court. Milo, the appealing defendant, was convicted on trial by jury. John Doe was never arrested. The assault took place about 9:00 o'clock P. M., September 16, 1927, in a drugstore situate at 28th and East Broadway, Portland, Oregon. At that hour there were present in the store A. W. Blackburn, the proprietor, Theresa Blackburn, his wife, and one J. H. Emery. Blackburn and Emery were deep in conversation relating to certain negotiations involving the exchange of property when, according to the undisputed evidence of record, three men suddenly appeared in the doorway of the store. Two of them advanced and covered both Blackburn and Emery with revolvers. One of the two reached his arm over the counter, pointed a large blue revolver at Blackburn and held it within a few inches of his body, and commanded him to ''stick 'em up'' and to ''get into the back room.'' Blackburn obeyed. In the meantime the other, pointing a smaller revolver at Emery, ordered him to ''stick 'em up.'' Emery was slow in action and his assailant, with the weapon clenched in his hand, struck him on the chin. He then inflicted a second blow, and said: ''Stick 'em up. Stick 'em up, you son-of-a-b——, and line up and get into the back room.'' Blackburn had been keeping a gun in the back room. When he reached that room he passed

momentarily out of his assailant's sight, grabbed his gun, loaded it, and attacked the two robbers. One of them exclaimed, "Beat it," and they fled. Blackburn fired towards one of the robbers, and the man with the longer revolver returned the fire. Within twenty minutes thereafter, two men were arrested and charged with the crime of assault with intent to rob. Immediately preceding the arrest, one of the men was seen to drop a large blue revolver upon the parking. The arresting officers picked it up, examined it, and removed four loaded cartridges and one empty shell. The empty shell was found under the hammer. The officers searched the other man, and in an inside coat pocket found a smaller revolver the cylinder or chamber of which was gone.

Now, reverting to the assault upon Emery by the man with the smaller revolver: When Emery was struck the second time by his assailant, the chamber of the revolver which he held in his hand dropped to the floor and rolled away, but was picked up very soon after the robbers had fled. This chamber, which contained no loads, was later found to belong to the revolver taken from the pocket of one of the men arrested.

Although the defendants, when arrested, set up an alibi, they were positively identified by the three parties in the store. From a careful analysis of the testimony, we are satisfied with the finding of the jury that the man with the big blue revolver was Kelly, and that the man who struck and beat Emery over the head with the smaller revolver was Milo, the appealing defendant.

■ The facts above set out are important, for the reason that they clearly indicate the intention of the accomplices when they entered the store and pointed

their weapons at the two men and assaulted and beat Emery. If they were acting together, with a common intent to assault and rob, the act of Kelly in pointing a revolver at the body of Blackburn, and in commanding him to "stick 'em up" and to "get into the back room," is, in law, also the act of Milo, his associate in crime; likewise, the blows that were inflicted upon Emery's chin and head by Milo were, in law, the blows of Kelly.

The statute that the accused is alleged to have violated makes an assault with intent to kill, or rob, or to commit rape, a substantive crime, and the use of a dangerous or deadly weapon is not an essential element of the offense. However, the indictment charges that the assault with intent to rob was made by pointing a loaded gun at the body of Blackburn, and we will determine the case with reference to the offense as charged.

Do the facts as related above justify the court's instruction?

In *State* v. *Parr*, 54 Or. 316 (103 Pac. 434), this court, speaking through Mr. Chief Justice MOORE, held that when an assault with intent to rob is made by placing the muzzle of a pistol near the body of a person from whom the assailant expects to take property by force, the weapon so employed is presumed to be loaded and a dangerous weapon, and the burden is upon the accused to prove that it was not loaded. This holding is in harmony with the weight of authority.

In *Lipscomb* v. *State*, 130 Wis. 238 (109 N. W. 986), the court held that proof that a gun was pointed at a person within shooting distance, with a threat indicating an intention to fire, the person assaulted not knowing but that it was loaded, is *prima facie* proof

that the gun was loaded, and it then devolves upon the accused to show that it was not loaded, in order to meet the presumption that it was.

In *Caldwell* v. *State,* 5 Tex. 18, the Supreme Court of that state held that, where one person presents a gun at another in a hostile manner, within shooting distance, the presumption is that it was loaded.

In *Crow* v. *State,* 41 Tex. 468, it was held that pointing a gun at a person is an assault unless it appears that the gun is unloaded, and the burden of proving that it was unloaded is on the defendant.

To the same effect is *Lockland* v. *State,* 45 Tex. Cr. 87 (73 S. W. 1054). See, also, *Myers* v. *Clearman,* 125 Iowa, 461 (101 N. W. 193); *Beach* v. *Hancock,* 27 N. H. 223 (59 Am. Dec. 373); *State* v. *Herron,* 12 Mont. 230 (29 Pac. 819, 33 Am. St. Rep. 576); *State* v. *Cherry,* 33 N. C. 475; 1 Wharton's Criminal Evidence (10 ed.), p. 667, and citations in note 13.

The defendant has referred to the case of *State* v. *Ragan,* 123 Or. 521 (262 Pac. 954). In that case the court instructed the jury in part, as follows:

"The law presumes that a pistol or revolver employed intentionally and unlawfully in an assault was loaded; and it would be incumbent upon a defendant * * to prove to your satisfaction beyond a reasonable doubt that the revolver or pistol was not loaded."

That instruction was held to be erroneous, for the reason that it cast upon the defendant the burden of overcoming to the satisfaction of the jury beyond a reasonable doubt the inference or presumption that the gun was loaded. The burden of proof is upon the state to prove every material allegation of the indictment beyond a reasonable doubt; and whenever, from the evidence of the defendant or of the state, it appears that there is a reasonable doubt as

to the sufficiency of the proof of any such material allegation, the defendant is entitled to an acquittal.

In the case at bar, the trial judge made no intimation that it was incumbent upon the defendant to overcome the presumption or inference beyond a reasonable doubt.

` ■ ■ We have hereinbefore noted what the defendants said and did when they entered the store. Under this state of facts, it was reasonable for the jury to determine, by an inference from the facts proved, that the gun was loaded: Or. L., § 794. And, by the same process of reasoning employed in determining that the gun was loaded, the jury reached the conclusion that the assault was committed with an intent to rob. When a highwayman pokes a gun into the face of his victim and commands him to "stick 'em up," his actions and his words speak a language that is well understood by the victim. It is plain to the victim and to the robber that the command to "stick 'em up," accompanied by gun play, is a representation by the assailant that he is prepared to execute his command.. It is unnecessary for the victim of a holdup to visualize the powder and the leaden ball within the highwayman's gun, or to subject his body to gun-fire, in order to vindicate the law. The outlaw who attempts to rob another by putting such other in fear of death or great bodily harm through his conduct in deliberately pointing a gun at such other at close range, impliedly represents that the gun is loaded, and the proof of such conduct establishes *prima facie* that the gun so used was loaded and capable of being discharged: 1 Wharton's Crim. Ev. (10 ed.), p. 667 and note.

We have not discussed the case of *State* v. *Godfrey,* 17 Or. 300 (20 Pac. 625, 11 Am. St. Rep. 830),

for the reason that that case treats of an alleged unloaded gun.

Any fault in the instruction complained of lies in the fact that it approaches the abstract. The rights of the defendant were in nowise prejudiced by the instructions of the court. In truth, by direct evidence the gun that was aimed at the body of Blackburn was proved to be charged with gunpowder and leaden ball, and capable of being discharged.

This case is affirmed. AFFIRMED.

RAND, C. J., and BEAN and BELT, JJ., concur.