Argued at Pendleton, May 10, affirmed June 25, rehearing denied September 24, 1929.

## STATE *v.* HARRY NEWBERG ET AL.

(278 Pac. 568.)

For appellant there was a brief over the name of *Messrs. Green & Hess.*

For respondent there was a brief over the name of *Mr. J. A. Burleigh,* with an oral argument by *Mr. Sylvester H. Burleigh.*

ROSSMAN, J.—■ ■ The first, second and fourth assignments of error seek our review of rulings made

by the trial judge upon matters which the law entrusts largely to his sound discretion. The motion for a change of venue was accompanied by nine affidavits; it was resisted by the state which filed a like number. It is difficult for us to determine from the brief descriptions, which each affiant made of himself, which of the 18 men was in the superior position to determine whether a fair jury was obtainable, and whether any sentiment, hostile to the appellant, would reach it after being impaneled and exert an effect. We notice, however, that one of the affiants, who subscribed to an affidavit for the plaintiff, had resided in Wallowa County only two months; another was a nonresident, and a third had resided there for three years. Among those who signed affidavits for the state, was the county judge and two members of the Board of County Commissioners; each of the state's nine affidavits was subscribed by individuals who had resided in the county for 15 to 47 years. All of these nine averred there was no circumstances present which would operate to the disadvantage of a fair trial of the appellant, and that there were portions of the county where the residents did not know the deceased and where no feeling upon the homicide was entertained. No affidavit took issues with the two latter averments. The motion was denied by an able Circuit Court judge, of many years' experience, in whose district there were only two counties, one of which was Wallowa. The order denying the motion directed that no juror should be drawn from the towns of Wallowa or Lostine, which were the two communities that the defendant claimed were particularly affected by the rumors. Following the entry of the order we find nothing in the record which indicates whether any veniremen were encountered, who were familiar with the alleged rumors, or af-

568

fected by any feeling upon the subject matter of the indictment. We feel justified in assuming that if any such difficulty had been encountered some account of it would have been made a part of the record. A lack of difficulty in obtaining an unbiased jury is persuasive that the accused did not suffer when the motion for a change of venue was denied. The principles of law that are applicable to the exercise of the trial court's discretion in matters of this kind have been many times enunciated by this court; we find it unnecessary to discuss these principles once more; our last expression upon this subject is in *Bramwell* v. *Rowland*, 123 Or. 33 (261 Pac. 57). We find no error in the court's ruling.

We have carefully reviewed the excerpt from the prosecutor's argument to the jury to which the defendant objected. The court's ruling upon the defendant's objection was pungent and strikingly in favor of the defendant; we find it impossible to believe that the defendant's case was prejudiced thereby; in fact his contention is not based so much upon what the prosecutor said preceding the ruling as the remarks of the latter that immediately followed. However, no objection was made to the latter, and after a careful consideration of it we find no occasion for interference, especially in view of the fact that the trial judge apparently felt that the argument was entirely fair.

The fourth assignment of error is also based upon a ruling largely in the discretion of the trial judge; it is our opinion that the evidence received as rebuttal testimony was such. The admission of rebuttal testimony rests largely within the discretion of the trial court, and this generally includes the determination of whether the testimony is of that nature: 16 C. J., p. 868; *State* v. *Merlo*, 92 Or. 678 (173 Pac. 317, 182 Pac. 153); *State* v. *Ayer*, 122 Or. 537 (259 Pac. 427);

*State* v. *Ragan*, 123 Or. 521 (262 Pac. 954). The court instructed the jury:

"I instruct you that if you find from the evidence in this case beyond a reasonable doubt that the defendant, Newberg, at or about the time alleged in the indictment in this County and State, fired his rifle at an object which he thought to be a deer, he failed to use due caution and circumspection and involuntarily killed Leonard Olsen, then the defendant would be guilty of involuntary manslaughter. Upon the other hand, if the State has failed to establish beyond a reasonable doubt, the guilt of the defendant of the crime of involuntary manslaughter, you should find him not guilty. * * And I further instruct you, that it is your duty to consider this case alone, without any reference to the indictment against Fred M. Black. In order to convict the defendant Harry Newberg of the charge made against him in this indictment, there must be evidence against him which convinces you beyond a reasonable doubt of his guilt. While these defendants are indicted together, and are charged with a joint offense, it is necessary that evidence should be given against each one of them, and it is within the power of the jury, and it is the duty of the jury, to consider the case of each defendant separately, and if the evidence is not sufficient to convict this defendant, Harry Newberg, under the instructions of the Court, no matter whether sufficient to convict the other defendant or not. You should consider the case of Harry Newberg alone, and if the State has not satisfied you of his guilt beyond a reasonable doubt you should acquit him."

The defendant does not criticise the foregoing, but complains because the court did not give three of his requested instructions, the trend of which is suggested by the following excerpts:

" * * each of the defendants in this case cannot be guilty of the crime of involuntary manslaughter. * *

If there is a reasonable doubt in your minds as to whether or not the deceased met his death as a result of a bullet from the gun when fired by Harry Newberg, it is your duty to find him not guilty of involuntary manslaughter. * * the party who fired the gun, whose bullet struck Leonard Olsen, could be guilty of involuntary manslaughter. In this connection I therefore instruct you that even though you may believe from all of the evidence in the case, that Harry Newberg was negligent under all the surrounding circumstances or that he failed to use due caution and circumspection, you cannot find him guilty of involuntary manslaughter in this case, if you believe from the evidence that Leonard Olsen met his death as the result of a bullet fired from the gun when held by Fred M. Black.''

The refusal of the court to give the latter instructions is assigned as error. It seems desirable to briefly state some of the facts. The appellant and his companion Crews, who were upon a deer hunting expedition, were camped for the night at the edge of a clearing immediately adjacent to a roadway, which apparently bore a fair amount of travel. Less than 200 feet from this road and running in a course generally parallel to it was another road which bore occasional travel. The area between the two roads, at the place with which we are concerned, was cleared of timber and of all underbrush except such as would generally be called weeds. With the two men at the time in question was the co-defendant Black, who was anxious to participate in the hunt, but could not do so until a day or two later. The three hunters did not expect to find deer at that precise place, but testified, nevertheless, that they had heard that deer had been seen in that vicinity. The land upon which they were camped was in private

ownership, but was frequently used for camping. In fact it was equipped with some crude tables and benches. At approximately 9:20 P. M., when the full moon was shining, Leonard Olsen, the deceased, who was upon horseback, left the upper roadway with the intention, apparently, of cutting across the clearing and entering upon the road which we have described as bearing the greater travel. At that time the hunters were about their camp fire; Crews heard the noise made by the hoofs of the horse and called it to the attention of the other two. Thereupon, Black reached for a spot light and remarking "maybe it is a buck," directed its rays to the vicinity of the noise. In a moment he exclaimed, "It is a buck! Harry get your gun." At that time the object was 125 feet away. The appellant had his gun at hand, and although he testified he could not distinguish the nature of the object, fired three shots at it; during all of this time Black directed the rays of his spot light at the object. When the third shot had been fired, Black said: "Hell, you never hit him, give me that gun." Thereupon, the appellant handed his gun to Black, and took the latter's spot light, directing its rays at the object, while Black fired one shot. About that time a thump was heard, as though a heavy object had fallen to the ground, and this in turn was followed by groans. Black approached the object, and discovered that it was a man gasping for breath and unable to speak. Shortly thereafter the man, Leonard Olsen, died. We need not recount the further details except to say that shortly after midnight the public officers arrived and the three men denied that they had caused the death. The next morning, at a distance of 200 or

300 feet from Olsen's body, the dead horse, light gray in color was discovered. It was the horse upon which Olsen was riding when the shots were fired; two had entered its body. About that time the three men withdrew their previous denials and said that Olsen was shot when his horse was mistaken by them for a deer.

The above, we believe, warrants the conclusion that appellant and Black both desired to kill the object they were firing at which they supposed was a deer. Their plan, and purpose was a joint one which the one entertained to the same extent as the other. To provide for its execution they proceeded together; Black got his spot light while the appellant reached for his rifle; then Black directed the rays of his light upon the object, while the appellant fired three bullets. After these shots were fired the appellant gave the gun to Black, who commenced to fire at the object while appellant directed the rays of the spot light.

The court's instructions were manifestly based upon the theory that the appellant could not be guilty of manslaughter unless one of his shots killed Olsen. Appellant's requested instructions were to the same effect, but were, perhaps more pointed. If appellant's theory is correct and applicable to this case, the court below for the sake of clearness of instruction should have given these requested instructions. The precise problem presented by this situation, that is, whether a party is guilty of manslaughter when a death is the proximate result of the joint culpable negligence of himself and another, has never been determined by this court, but we believe that two of our decisions foreshadow the result.

Our statute defining manslaughter, Section 1898, Or. L., provides:

"If any person shall, in the commission of an unlawful act, or a lawful act without due caution or circumspection, involuntarily kill another, such person shall be deemed guilty of manslaughter."

In *State* v. *Holbrook*, 98 Or. 43 (188 Pac. 947, 192 Pac. 640, 193 Pac. 434), the conviction of two defendants of voluntary manslaughter was upheld.

In *State* v. *Miller,* 119 Or. 409 (243 Pac. 72), the defendant was charged with manslaughter predicated upon the operation of his automobile in such a negligent manner that it caused a death. In holding proper the rejection of an instruction, requested by the defendant, upon the subject of contributory negligence this court said: "The instruction requested was sound, but was apt to be misleading in view of the fact that contributory negligence in an action of this kind is no defense." The rule that contributory negligence is no defense in prosecutions for manslaughter has been many times reiterated by the courts. Since a negligent act of the deceased, which contributed as a cause in bringing about the ultimate result, does not defeat the prosecution, we fail to understand why a similar act, performed by a third party, should demand a judgment of innocence.

The authorities recognize no difference between the effect of the contributory negligence of the deceased, and the concurring negligence of a third party. In fact the authorities apply to a situation, such as is presented by this assignment of error, substantially the same principles of law as are applied in a civil action based upon negligence, except that they demand a higher degree of carelessness than con-

stitutes negligence, and require that the evidence must establish between that culpable negligence, and the death, the relationship of an efficient proximate cause.

We shall now refer to some of the authorities. In Brill's Cyclopedia Criminal Law, Section 221, we find, "There may be principals in the second degree, aiders and abettors, and accessaries before the fact in involuntary manslaughter. * * There may be accessaries after the fact to both voluntary and involuntary manslaughter." From Clark's Criminal Law, page 178, we quote: "Where the culpably negligent acts of two or more persons concur in causing another's death, all of them are guilty." The following is taken from Clark & Marshall, Crimes (3 ed.), Section 164:

"There may be principals in the second degree and accessories before the fact to involuntary manslaughter. Thus, if two men drive separate vehicles at a furious and dangerous speed along the highway, each inciting and abetting the other, and one of them drives over and kills a person, the one thus causing the death is guilty of manslaughter as principal in the first degree, and the other is guilty as principal in the second degree. And the same would be true of two persons in the same vehicle, one driving and the other inciting and abetting him."

■ We have read substantially all of the cases cited by the writers, and find that they fully support the text. Many cases to similar effect are digested in a comprehensive note in 61 L. R. A., at p. 298. See, also, May's Criminal Law (3 ed.), § 73, 13 R. C. L., Homicide, § 161, and 29 C. J., Homicide, § 141. The following cases may be read with profit: *The Queen* v. *Ledger*, 2 Foster & Finlason's Rep. 857; *Regina* v. *Haines*, 2 Car. & K. 368; *Regina* v. *Swindall*, 2 Car. & K. 230;

*Regina* v. *Benge,* 4 Foster & Finlason's Rep. 504; *Ainsworth* v. *United States,* 1 App. Cas. (D. C.) 518 and *State* v. *Shelledy,* 8 Iowa, 477. In a brief, filed by counsel for the appellant, which gives evidence of much industry, there is called to our attention several cases which upon a hasty examination might seem out of harmony with the above. However, they are capable of a substantial distinction from the facts of our case, and as thus distinguished it becomes apparent that the principles of law they declare would not be applicable to our case. Thus in *Wiley* v. *State,* 19 Ariz. 346 (170 Pac. 869, L. R. A. 1918D, 373), the court failed to find any evidence that the act which took the life was shared in by the appellant. In *Adams* v. *State,* 65 Ind. 585, and *Regina* v. *Skeet,* 4 Foster & Finlason's Rep. 931, the charges of manslaughter were based upon homicides, which occurred in the commission of unlawful acts; in each instance the crime out of which the killing occurred was a minor misdemeanor and none of the appellants contemplated the taking of a life nor shared in the killing. *State* v. *Gartland,* 304 Mo, 87 (263 S. W. 165) is greatly weakened, if not overruled, by *State* v. *Pauly* (Mo.), 267 S. W. 799. Other cases cited by the defendant we deem it unnecessary to mention herein. The evidence was capable of supporting a finding that the first or second shot fired by the appellant took Olsen's life.

■■ We deduce the rule from the above that where the act of a defendant is of the required degree of culpability and it operates as an efficient proximate cause of the death, the defendant is guilty of the crime of involuntary manslaughter, even though someone else's negligence may have concurred. Such being our view of the matter we find no error in the refusal of the court to give the requested instructions.

■ There remains undisposed of only the assign-
ment of error predicated upon the refusal of the
court to direct a judgment in the appellant's favor.
We have already reviewed at some length the facts,
but believe that it is pertinent to take notice of the
following. There was substantial evidence that the
three men could not reasonably expect to find deer
in the immediate vicinity of their camp, and that it
was most unreasonable to believe that a deer would
approach within 125 feet of their fire. The vicinity
of their camp was not remote from all habitations,
but the occupancy of the surrounding country might
reasonably have persuaded them that human beings
and domestic cattle would be more likely to approach
their camp fire than deer. Indicating the lax care the
appellant employed before he discharged his rifle, we
have already mentioned the fact that he did not ap-
prise himself of the nature of the object at which
he was shooting before he pulled the trigger. It is
true that he testified that his hasty glance gave him
the impression of a buck; a buck would have pos-
sessed horns. It was lawful to kill the latter, but
not at night-time, and had he paused long enough to
notice whether the supposed deer was possessed of
horns, this unfortunate death would not have oc-
curred. The testimony indicates that the horse was
of a very light gray color, and that a neighbor had
been able to distinguish it and other horses of
Olsen's at a distance much greater than 125 feet upon
the same night. A witness, who was herding sheep
in the same little valley, had no difficulty in detecting
the movements of his sheep when they were distant
70 yards. The ground between the three hunters
and Olsen was level at the place where this incident

occurred. Under the foregoing we cannot say that the jury erred in concluding that appellant's act was accompanied with the degree of culpability which our statute defines as manslaughter. That portion of *Parks* v. *State*, 105 Ga. 242 (31 S. E. 580), which relates to involuntary manslaughter, is quite similar to the case before us. It was not error to overrule the motion.

It follows from the foregoing that the judgment of the Circuit Court is affirmed.          AFFIRMED.

BEAN, J., and McBRIDE and RAND, JJ., concur.