Argued July 22, affirmed August 25, 1975

STATE OF OREGON, *Respondent, v.* DAN
FRANCIS SNEDEKER (C 74-08-2591), *Appellant.*

539 P2d 1118

*John K. Hoover,* Deputy Public Defender, Salem,

argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

Defendant was indicted for first degree robbery (ORS 164.415)[1] and convicted of the included crime, second degree robbery (ORS 164.405).[2] In this appeal he contends that by erroneously instructing the jury as to the inferences it might draw from the evidence the court "effectively eliminated the necessity of proof beyond a reasonable doubt on the elements of second degree robbery for which [he] was convicted * * * [thereby precluding] a jury determination of [his] guilt on the lesser included offense of first degree theft."

Defendant admitted to being an accomplice with one Johnson in stealing $10,000 from the victim, but contended it was theft through use of trickery, not robbery.

---

[1] ORS 164.415(1) provides:

"(1) A person commits the crime of robbery in the first degree if he violates ORS 164.395 and he:
  "(a) Is armed with a deadly weapon; or
  "(b) Uses or attempts to use a dangerous weapon; or
  "(c) Causes or attempts to cause serious physical injury to any person."

[2] ORS 164.405(1) provides:

"(1) A person commits the crime of robbery in the second degree if he violates ORS 164.395 and he:
  "(a) Represents by word or conduct that he is armed with what purports to be a dangerous or deadly weapon; or
  "(b) Is aided by another person actually present."

The victim was a woman narcotics undercover officer who made contact with defendant to purchase eight ounces of cocaine for about $10,000. She accompanied defendant in his car to a place where they were to meet a third person, Johnson, who would supply the cocaine. For security reasons the $10,000 was carried locked in the trunk of defendant's car. They stopped on a street to pick up Johnson. As they did so, the victim testified defendant poked her in the left side with what she believed to be a gun (which she never saw). At the same time, Johnson entered the car and pointed what she believed was a revolver or automatic pistol at her right side. It was so concealed that she could see only about three inches of the barrel and it appeared to her to be a gun. She testified defendant said, " 'We are going to take your money. There's nothing you can do about it. If you try to do anything, we are going to kill you.' " Thereafter, she testified they repeatedly threatened her and she believed her life was in imminent danger. They returned her to where defendant had started out with her, let her out, and fled with the money.

Defendant testified that no gun was possessed by him or Johnson, that they did not threaten the victim's life although she seemed very nervous at the time the theft was consummated, and that the victim had merely been tricked into making the money available for them to steal.

Prior to the introduction of evidence by either side the court instructed the jury on the elements of robbery in the first and second degrees, specifically pointing out that a person commits the crime of robbery *in the first degree* if armed with a "deadly weapon" (as alleged in the indictment), defined as

> "* * * any instrument, article or substance specifically designed for and presently capable of causing death or serious physical injury."

The court correctly noted at the same time:

> "When robbery is committed by threatening the intended victim with a firearm within firing range, you, the jury, may infer that the weapon is loaded."[3]

At the conclusion of the trial, after once again reviewing the elements of first and second degree robbery and additionally instructing on the elements of theft in the first degree,[4] the court made the following statement to the jury:

> "For purposes of—when Robbery is committed by threatening the intended victim with an object which is represented by the defendant or his accomplice, by word or conduct, as a firearm, you, the jury, may, but you are not required to infer from these facts that the object was a firearm, and that it was specifically designed for and capable of causing death or serious physical injury.

---

[3] State v. Lanegan, 192 Or 691, 236 P2d 438 (1951); State v. Parr, 54 Or 316, 322, 103 P 434 (1909).

[4]

"Under Oregon law, a person commits the crime of Robbery in the First Degree if in the course of committing or attempting to commit a theft, he is armed with a deadly weapon and he uses or threatens the immediate use of physical force upon another person with the intent of preventing or overcoming resistance to his taking of the property.

"* * * * *

"A person commits the crime of Robbery in the Second Degree if, in the course of committing or attempting to commit theft, he represents by word or conduct that he is armed with what purports to be a dangerous or deadly weapon, or he is aided by another person actually present and he uses or threatens the immediate use of physical force upon another person with the intent of preventing or overcoming resistance to his taking of the property.

"Under Oregon law, a person commits the crime of Theft in the First Degree when, with intent to deprive another of property or to appropriate property to himself or to a third party, he takes, appropriates, obtains, or withholds such property from an owner thereof, and the value of the property is $200 or more."

"If you find that the object was a firearm and that its use was threatened within firing range, you may, but you are not required to infer that the weapon was loaded."

Defendant objects to this "abstract" instruction, contending that because the court "confused the term 'firearm' and 'deadly or dangerous weapon'" this statement by the court may have permitted the jury "to infer from word or conduct [that] an object was a firearm when second degree robbery requires a representation [that] an individual is armed with a deadly or dangerous weapon. Coupled with the accepted inference instruction, the jury had no choice but to find defendant or his accomplice made the necessary representation."

We find defendant's objections to be without merit. Any conceivable error—and we do not hold there was any—was "cured" by defendant's ultimate conviction of robbery *in the second degree. See State v. English,* 233 Or 500, 503, 378 P2d 997 (1963); *State v. Reyes,* 209 Or 595, 619, 303 P2d 519, 304 P2d 446, 308 P2d 182 (1957); *State v. Meyers,* 57 Or 50, 110 P 407, 33 LRA (ns) 143 (1910). The only possible effect of the "general" instruction with respect to the charge of second degree robbery would have been to suggest that the jury would *necessarily* have to find that defendant had represented, by word or conduct, that he was armed with a firearm, *and* to infer that he was, in fact, so armed, in order to return a verdict of guilty. As so understood, the instruction would have imposed a burden upon the state greater than that required by the statute and could not, therefore, have prejudiced defendant in any way. *State v. Anderson,* 242 Or 368, 371-72, 409 P2d 681 (1966); *State v. Libbey,* 224 Or 431, 356 P2d 161 (1960).

The defendant also admitted in his testimony that he was aided by another person, Johnson, who was

present. This is the element required by ORS 164.405 (1) (b), *see* n 2, a part of that statute which defendant's argument apparently seeks to ignore. The jury could have, under facts established by defendant's own evidence, and regardless of the presence of weapons, believed threats of "the immediate use of physical force" (ORS 164.395) were made in order to overcome resistance to the theft as opposed to defendant's testimony that only trickery was used. It is thus apparent that the defendant was not prejudiced in any way.

Affirmed.