Argued July 7, affirmed September 20, rehearing denied October 18, 1927.

## STATE *v.* K. Q. AYER.

(259 Pac. 427.)

**Embezzlement—Indictment Charging That Accused Feloniously and Unlawfully Refused to Deliver Automobile Held to Charge Larceny by Bailee.**

1.  Indictment charging that accused, on or about a certain date, in a certain county, then and there being a bailee of a seven-passenger Paige sedan automobile, which was the property of another, of specified valuation, wilfully, feloniously and unlawfully neglected and refused to deliver, keep and account for the said property according to the nature of his trust *held* sufficient to charge crime of larceny by a bailee.

**Embezzlement—Evidence Held to Justify Conviction of Larceny of Automobile by Bailee.**

2.  Evidence *held* to justify conviction of crime of larceny by bailee, in that accused to whom automobile was delivered for sale unlawfully deprived owner of his property in violation of the trust imposed on him.

**Embezzlement — In Prosecution for Larceny of Automobile by Bailee, Owner's Testimony as to Efforts to Locate Accused Held Properly Admitted.**

3.  In prosecution for larceny of automobile by bailee, a garage-keeper, to whom automobile was delivered by owner for sale, owner's testimony as to his efforts to locate accused after accused left town *held* properly admitted to show owner's diligence and to negative idea that accused had not left town secretly or with a

view of avoiding being called to account for the automobile, which was in his possession.

**Embezzlement—Exclusion of Evidence as to What Owner Would have Done if Accused had Offered Him Value of Automobile After Crime of Larceny by Bailee was Complete Held Proper.**

4. In prosecution for larceny of automobile by bailee, a garage-keeper, to whom it was in trust for sale by owner, court properly sustained objection to question asked owner as to whether he would have accepted amount stated to be value of car, if accused had offered it to him, when he found accused and demanded accounting, since crime was complete when accused sold car and pocketed the money.

**Embezzlement — Bailee's Intent When Unlawfully Disposing of Property Entrusted to Him is Immaterial on Question of Guilt of Larceny by Bailee.**

5. Bailee's intent when unlawfully disposing of property entrusted to him is immaterial on question of his guilt of crime of larceny by bailee, if effect of what he does is to deprive bailor of his property and he knows that such will be the effect, and exclusion of evidence as to bailee's intent was, therefore, not error.

**Witnesses—Owner's Letters to District Attorney Discussing Legal Remedies to Recover His Automobile Held Privileged and Inadmissible, in Prosecution for Larceny by Bailee (Or. L., § 733, subds. 2, 5).**

6. In prosecution for larceny by bailee, owner's letters to district attorney discussing what legal remedies might be brought to bear to enable him to recover his property *held* privileged and inadmissible, under Section 733, subdivisions 2, 5, Or. L.

**Criminal Law—Extent to Which Witness may be Permitted to Repeat on Rebuttal Matters Testified to in Chief is Largely Within Trial Court's Discretion.**

7. Extent to which witness, testifying to new matter on rebuttal, may be permitted to repeat statements testified to on his examination in chief is largely within the discretion of the trial court.

**Criminal Law—Refusal of Defendant's Requested Instructions Covered by Instructions Given Held not Error.**

8. Refusal to give instructions requested by defendant, which so far as they were the law, were covered by court's general instructions, *held* not error.

**Embezzlement—If Transaction in Which Owner Delivered Automobile to Defendant Constituted Sale, Defendant in Absconding With Car Would not be Guilty of Larceny by Bailee.**

9. If transaction in which owner of automobile delivered car to defendant with certificate of ownership indorsed in blank and defendant delivered to owner a note for agreed value of car was intended to constitute a purchase and sale, defendant would not

---

5. See 9 R. C. L. 1278.
7. See 28 R. C. L. 597.
8. See 14 R. C. L. 752.

be guilty of larceny by bailee in thereafter leaving town without paying for car, regardless of his intent.

**Embezzlement—If Owner Delivered Automobile and Certificate of Ownership Indorsed in Blank to Defendant for Sale, Defendant, by Absconding With Car, Would be Guilty of Larceny by Bailee.**

10. If owner delivered automobile to defendant, garage-keeper, for sale, with certificate of ownership indorsed in blank, and took back defendant's note for value thereof merely as security on understanding that no advantage would be taken by defendant to unlawfully transfer the car, and that certificate was to be used only in case of *bona fide* sale, defendant, by indorsing certificate to himself and leaving town for parts unknown without paying purchase price, would be guilty of larceny by bailee.

---

Criminal Law, 16 C. J., p. 740, n. 8, p. 868, n. 34, p. 936, n. 75, p. 1063, n. 85; 17 C. J., p. 244, n. 62, p. 310, n. 6.
Evidence, 22 C. J., p. 613, n. 6.
Larceny, 36 C. J., p. 810, n. 3, p. 878, n. 60, p. 919, n. 30, p. 923, n. 69, p. 932, n. 82.

From Klamath: A. L. LEAVITT, Judge.

Department 1.

The defendant was indicted in the Circuit Court of Klamath County for the crime of larceny by bailee. The charging part of the indictment is as follows:

"The said K. Q. Ayer on or about the 16th day of November, A. D. 1926, in the said county of Klamath and State of Oregon, then and there being, and then and there being a bailee of a 7-passenger Paige Sedan automobile, 1924 model, the personal property of H. G. Carter, of the valuation of $1,650, did then and there wilfully, feloniously and unlawfully neglect and refuse to deliver, keep and account for the said personal property according to the nature of his trust, contrary to the statutes in such cases made and provided, and against the peace and dignity of the state of Oregon."

There was a verdict of guilty as charged and a judgment of imprisonment in the penitentiary, from which judgment defendant appeals alleging various

grounds of error, which will be noticed in detail in the opinion.    AFFIRMED.   REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. W. A. Wiest.*

For respondent there was a brief over the names of *Mr. W. M. Duncan,* District Attorney, and *Mr. U. S. Balentine,* Deputy District Attorney, with an oral argument by *Mr. Balentine.*

McBRIDE, J.—1, 2. The first objection is to the sufficiency of the indictment. We hold that the indictment is sufficient: *State* v. *Chapin,* 74 Or. 346, 349 (144 Pac. 1187), and *State* v. *Ross,* 55 Or. 450 (104 Pac. 596, 106 Pac. 1022, 42 L. R. A. (N. S.) 601). Another alleged error is the ruling of the court overruling defendant's motion for a directed verdict on the ground that there is no evidence sufficient to connect him with the crime charged. This involves a review of all the evidence introduced by the state and, without giving it in detail, we will say that there is evidence tending to show that Harold G. Carter, the principal witness for the state, about the eighth day of October, 1926, took a Paige sedan automobile to the garage and salesroom of the defendant in Klamath Falls, and on or about the eleventh day of the same month he proposed leaving it with the defendant for sale at a price of $1,650, and then and there gave the defendant written authority to sell the automobile for that price and the defendant in return gave a writing reciting the terms of the proposed sale; that during the course of the negotiations, it appeared that Carter, who owned the automobile, resided at Dunsmuir, California, and that he had a pink certificate of ownership, a transfer of which, under

the laws of California, would be sufficient as a bill of
sale to the purchaser; that the defendant suggested to
him that it would expedite the sale if he would indorse
the pink certificate, as it is called, in blank, so that
there would be no delay in case a customer was found
for the car, suggesting that sometimes when a cus-
tomer bargained for the sale of a car there was quite
a delay regarding the transfer and that in the interim
he might get out of the notion of buying and the sale
would thereby fall through; that Carter, the owner of
the car, hesitated in regard to the indorsing of the
certificate in blank so that the name of the purchaser
could be written in by Ayer, but finally consented on
the condition that Ayer would give him a promissory
note for $1,650, as security for the return of the pink
certificate and wrote out a promissory note for that
amount, which Ayer signed, it being agreed that if
there was no sale that Carter would destroy the note
in Ayer's presence; that the matter went on for some
time without a sale being made and it appears from
the testimony that about a month later Ayer wrote
his own name in the pink certificate in the place pro-
vided therein, which indicated it had been transferred
to the purchaser and after several days or weeks of
waiting, the time not being material, wrote offering
to pay $100 down and give a note for $1,550; that he
sent a note with the amount left blank, but did not
send the $100 or any money, but later on, being in-
formed that Carter would be up and see him upon a
certain day, he closed up his business in Klamath Falls
and left taking the car with him without leaving any
ascertainable address as to his whereabouts or inform-
ing Carter where he had gone or what he had done
with the car; that after making diligent inquiries and
consulting the district attorney as to what was to be

done in the premises, Carter finally found the defendant in San Francisco and was informed by him that he had sold the car for $600 and insisted that he was the owner of it by virtue of the indorsement on the pink certificate; that defendant never paid a dollar for the car and seems to have pocketed the $600 he received for it; and that defendant suggested that he would pay some small amount or give him an order for a small amount due him in Klamath Falls, which offer was not acceded to by Carter, who later caused defendant's arrest which resulted in an indictment upon the charge of larceny by bailee.

The foregoing is not by any means a full statement of the testimony, but it seems clear to us that, upon the evidence introduced by the state, defendant was guilty as charged, unless some of the allegations of error urged by defendant are well taken. Outside of objections going to the insufficiency of the evidence to justify the verdict, the other objections are as follows:

3. The next objection is that the court erred when it allowed Carter to testify as to the extent of the effort required on his part to locate defendant Ayer after Ayer had left Klamath Falls. This testimony was properly admitted. It tended to show diligence on Carter's part and negative the idea which might have existed that defendant had not left secretly or with a view of avoiding being called to account for the car which he had in his possession.

4. Another objection is that the court sustained an objection to the following question propounded to the witness Carter:

"If he (referring to defendant Ayer) had offered you $1,650 would you have accepted?"

This was referring to the time after defendant had disappeared with the car and sold it for $600, and after Carter had found him in San Francisco and practically demanded that he give an account of what he had done with the car. The ruling of the court was clearly correct. If the defendant had committed larceny by bailee, the crime was complete when he sold the car, and indeed the fact of his selling it for an unauthorized price and pocketing the money, in itself, constituted such a breach of his trust as would have justified the charge of larceny by bailee, and what Carter would have done or might have done, under these circumstances, is immaterial. It is not uncommon that when a clerk or a bailee has embezzled money and offers to return it, the injured party will accept the money; but this does not wipe out the crime, nor does it have a tendency in that direction, and sometimes comes very near to compounding a felony. We find no error in the ruling of the court on this question.

5. Another error, is the ruling of the court sustaining an objection to the following question, asked the defendant Ayer when he was on the witness-stand, as to whether or not he ever had any intention of converting this car to his own use, and if he had ever refused to make an accounting to Mr. Carter. An objection to this question was sustained, the court saying that it must be left to the jury to determine this contention. The same question had already practically been asked and answered without objection as shown by the following:

"Q. State whether or not, Mr. Ayer, you ever had any idea or notion or purpose of beating or defrauding or in any way depriving Mr. Carter of his just property or money in this transaction? A. Never;

never had any intention of beating him out of anything.''

Both questions were out of the case, as it does not matter what the intent is in the mind of the bailee in unlawfully disposing of property entrusted to him, if the effect of what he does is to deprive the bailor of his property and he knows that such will be the effect. Probably, in most instances, or, at least in many instances, the clerk of a merchant, or the cashier of a bank, who gambles away the money of his employer, intends to return it, and not unusually expects to return it; but this intent in his own mind does not change the embezzlement into a lawful act and relieve the party from the consequences of the violation of his trust.

6. The next two assignments of error may be considered together. They consist of letters written by Carter to the district attorney of Klamath County, discussing what legal remedies might be brought to bear to enable him to get possession of his car. These were objected to, but neither the reporter's notes nor the bill of exceptions state the alleged grounds of objection. In fact, it seems to have been the practice all through the case simply for the reporter to note the word ''objection'' and let it go at that, but it appears from the transcript that the objection was argued by both counsel and sustained by the court, and we may fairly assume it was upon the patent and legitimate ground that the communications to the district attorney were privileged: See subds. 2 and 5, § 733, Or. L. It would have been contrary to public policy, and an outrage to have admitted these letters in evidence.

7. The next three objections go to the rulings of the court allowing witness Carter on rebuttal, and in con-

nection with other statements, to repeat a part of the conversation detailed in his principal testimony after defendant had denied that such conversation occurred. It is evident that the witness in testifying to some new matter, which was proper on rebuttal, once in a while "slopped over" and referred to other parts of the conversation, which he had testified to in whole, or in part, on his examination in chief; but we fail to see that any harm was done to defendant and such matters are always very largely in the discretion of the court.

Another objection is that the court erred in instructing the jury as follows:

"You are further instructed that if you should find it a fact that the note was given by K. Q. Ayer in payment of the automobile in question, and was so accepted by H. G. Carter, then you will find that K. Q. Ayer became the owner and not the bailee of the automobile. But if you find it a fact that the note was given for any other purpose except in payment of the car, and so accepted by H. G. Carter, you are to find in accordance with the purpose for which the note was given."

This instruction, in our opinion, was good law, especially when taken in connection with the general instructions given by the court.

Another specification of error is the giving by the court of the following instruction:

"A contractual relation once established between two competent contracting parties will continue to exist unless terminated by agreement of the parties themselves or by fulfillment of the obligation in the contract, or by the expiration of the contract according to its terms. If you find certain contractual relationship existed between K. Q. Ayer and H. G. Carter on October 11, 1926, that relationship would

continue to exist until terminated in a legal manner. In order that a subsequent agreement between the parties to a contract will terminate the existing contract, it is necessary that all the elements of a binding contract be present; which are; competent parties, legal subject matter, meeting of the minds, or a mutual agreement, and a consideration."

8. There are three other objections to the failure of the court to give instructions requested by the defendant, but these instructions, so far as they are the law, were covered by the general instructions given by the court, and it was not necessary for the court to repeat them in the exact language suggested by the defendant.

The general instructions were lengthy, and very clear, and gave the defendant every advantage that the law gives him, and we find that he has no reason to complain of any act of omission of the court in giving or refusing instructions.

9, 10. Defendant's testimony introduces a very plausible defense, which was urged by his counsel with much zeal and great ability, in that he claims that he was a purchaser of the car and not a bailee, and that by writing his name in the pink certificate, which Carter turned over to him signed by him in blank, he became the absolute owner of the car. If such was the intention of the parties at the time, whatever the moral aspects of the case might be as to the defendant, he would not be guilty of larceny by bailee. This was properly left for the determination of the jury. If the indorsement of the pink certificate and the giving of the promissory note were upon the understanding that no advantage would be taken of the pink certificate to unlawfully transfer the car, but that it was only to be used in case of a *bona fide* sale,

then the defendant was guilty and the jury evidently so found, and we think properly.

The judgment is affirmed.

AFFIRMED.   REHEARING DENIED.