Submitted on briefs January 4, reversed and remanded with
directions February 25, petition for rehearing denied
March 21, 1972
(See also appeal filed July 18, 1972)

## PAPADOPOULOS, *Appellant*, *v.* STATE BOARD OF HIGHER EDUCATION ET AL (No. 71 1085), *Respondents.*

494 P2d 260

Michael Papadopoulos, Corvallis, in propria persona, filed the briefs for appellant.

Lee Johnson, Attorney General, John W. Osburn, Solicitor General, and Al J. Laue, Assistant Attorney General, Salem, filed the brief for respondents.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

SCHWAB, C. J.

In this mandamus proceeding plaintiff, who was employed as a professor at Oregon State University from 1967 to 1970, seeks to be allowed to inspect a report made to university officials concerning the operation of the School of Science, in which plaintiff was a faculty member. Defendants are the State Board of Higher Education, which has administrative responsibility over Oregon State University, ORS 351.060(1), and the Board's chancellor. The trial court ruled in defendants' favor, and plaintiff appeals.

The plaintiff contends that he has a right to inspect the report under the terms of ORS 192.030, which provides:

"The custodian of any public records of the state or a political subdivision, unless otherwise expressly provided by statute, shall furnish proper and reasonable opportunities for inspection and examination of the records in his office and reasonable facilities for making memoranda or abstracts therefrom, during the usual business hours, to all persons having occasion to make examination of them. The custodian of the records may make reasonable rules and regulations necessary for the protection of the records and to prevent interference with the regular discharge of his duties."

The defendants contend that for the reasons developed below the report is confidential, and thus they are justified in denying plaintiff access to it under the terms of ORS 44.040(1)(e) which provides:

"(1) There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases:
"* * * * *
"(e) A public officer shall not be examined as

to communications made to him in official confidence, when the public interest would suffer by the disclosure."

The report in question came about in the following manner. In the fall of 1969 complaints were made about the administration of the School of Science at Oregon State University; these included a resolution passed by the faculty of the Mathematics Department, in which plaintiff was teaching, calling for an investigation. This led the the university's Acting President, Roy Young, retaining a team of four educators—all members of faculties of out-of-state universities—to come to Oregon State and investigate the School of Science. These four consultants (hereinafter called the committee) visited the campus early in 1970 and later submitted a written report of the conclusions of their investigation. It is this report which plaintiff seeks to examine.

■ Also in early 1970, plaintiff was having employment problems with the university. Although the faculty of the Mathematics Department recommended that he be granted tenure, the Dean of the School of Science recommended to the contrary, and the university authorities denied tenure. Plaintiff left the employ of Oregon State University at the end of the 1969-70 academic year. It appears from the record before us that plaintiff has a separate suit pending against the university concerning the termination of his employment. It also appears that plaintiff seeks to examine the committee's report in order to seek evidence that may have some relevance to that other litigation.①

---

① If the document in question is a public record available for inspection pursuant to ORS 192.030, plaintiff need not show any particular need to see it. *See,* 34 Op Att'y Gen 1039, 1042 (1970).

■ Acting President Young testified there was an "understanding" that the report would be treated as confidential. More specifically, he testified that when he first asked the four members of the committee to participate in the investigation, he assured them their report would be treated as confidential, and that one of the four conditioned his participation in the investigation on the promise of confidentiality. The record does not disclose exactly what the parties meant by the term "confidential"; it does show that the chancellor of the State Board of Higher Education has seen the report, most of the top administrators of Oregon State University have seen the report, and the department chairmen in the School of Science have seen parts of the report.

The defendants do not contend that the committee's report is not a public record. In any event, we think it is a public record within the statutory definition:

" 'Public record' means a *document*, book, paper, photograph, file, sound recording or other material, such as court files, mortgage and deed records, regardless of physical form or characteristics, *made, received, filed or recorded in pursuance of law or in connection with the transaction of public business,* whether or not confidential or restricted in use * * *." (Emphasis supplied.) ORS 192.005(5).

The issue remains, however, whether it is subject to inspection under the terms of ORS 192.030, or unavailable for inspection under the terms of ORS 44.040 (1)(e).

---

However, plaintiff has suggested his interest in the committee's report is limited to a quest for evidence to be used in other litigation. No issue is raised as to why plaintiff did not use a subpoena *duces tecum,* or some other discovery device.

At common law the public had certain limited rights to inspect government documents. 76 CJS 133, Records § 35. American courts have differed over the scope of this common law right. *See, Nowack v. Auditor General,* 243 Mich 200, 219 NW 749, 60 ALR 1351 (1928) (holding that to the extent that old English common law restricted access to government documents, such restrictions were not compatible with modern American democratic institutions). Some states still follow the common law on this subject. *See,* e.g., *Republican Party v. State, ex rel. Hall,* 240 Ark 545, 400 SW2d 660 (1966).

Other states, including Oregon, have enacted specific legislation on this subject. Oregon's first "right to know" statute dates back to 1862. General Laws of Oregon, Title V, p 326 (Deady 1845-1864). It granted citizens of this state the right to inspect "public writings," and is still in effect as ORS 192.010.[9] The public's rights were expanded in 1909 with the enactment of a statute granting a right to inspect all public records, although there was no statutory definition of the term "public records." General Laws of Oregon 1909, ch 98, p 158. This 1909 statute was the predecessor of the present statute, ORS 192.030.

The 1909 statute was interpreted in *Bend Publishing Co. v. Haner,* 118 Or 105, 244 P 868 (1926). That case upheld the right of a newspaper publisher

---

[9] ORS 192.010 provides:

"Every citizen of this state has a right to inspect any public writing of this state, except as otherwise expressly provided by statute."

"Public writings" are defined as:

"* * * [W]ritten act[s] or record[s] of an act of a sovereign authority, official body, tribunal or public officer of this state, whether legislative, judicial or executive." ORS 192.005(6).

to have access to the records and files of the county and circuit courts for the purpose of securing matter for publication.[9]

The 1909 statute was later codified as ORS 192.030, and together with ORS 192.010, was interpreted in the leading case of *MacEwan v. Holm et al,* 226 Or 27, 359 P2d 413, 85 ALR2d 1086 (1961), which held a member of the public was entitled to examine data concerning nuclear radiation sources compiled by the State Board of Health.

*MacEwan v. Holm et al,* supra, was decided February 1, 1961. Shortly thereafter a bill enacting substantial new provisions concerning public records became effective. Oregon Laws 1961, ch 160, p 146. These provisions included Oregon's first statutory definition of public records, Oregon Laws 1961, ch 160, section 2(5), p 147, which as amended, Oregon Laws 1965, ch 302, section 1, p 641, is now codified as ORS 192.005(5), quoted above. The 1961 Act also amended ORS 192.030, adding the emphasized language we are here called upon to interpret:

"The custodian of any public records of the state or a political subdivision, *unless otherwise expressly provided by statute,* shall furnish proper and reasonable opportunities for inspection and examination of the records * * *." (Emphasis supplied.) Oregon Laws 1961, ch 160, section 4, p 147.

Since being enacted in its present form, ORS 192.030 has not been interpreted by any Oregon appellate court.

---

[9] *See also,* State v. Keller, 143 Or 589, 601, 21 P2d 807 (1933) (involving a different statute in which the court said, "The public must always have access to all public records required to be kept or made by a public official unless the statute specifically provides otherwise.").

This brief survey of the evolution of laws concerning the public's right to inspect public records indicates that there has been a legislative and a judicial trend toward expansion of these rights. It also indicates that the reliance by both parties on certain passages from *MacEwan v. Holm et al,* supra, is somewhat misplaced, since that case was decided before ORS 192.030 was enacted in its present form.[4]

The other statute here in question is ORS 44.040 (1)(e), creating a qualified privilege against the disclosure of information received in "official confidence" (no statutory definition) when there would be harm to the "public interest" (no statutory definition) from disclosure. There was a limited official secrets privilege at common law. Note, *Government Privilege Against Disclosure of Official Documents,* 58 Yale L J 993 (1949).[5] *See, generally,* 8 Wigmore, Evidence 745-817, §§ 2367-2379; McCormick, Evidence 302-13, §§

---

[4] Specifically, defendants direct our attention to the following passage from MacEwan v. Holm et al:

"The public's right of inspection is not without qualification. There may be circumstances under which the information contained in a record can be justifiably withheld from the person seeking it. * * * Thus where the information is received in confidence, it may be proper to refuse access to it * * *." 226 Or at 44.

However, since as pointed out above, ORS 192.030 has been amended since the *MacEwan* decision, we do not believe this passage is necessarily an authoritative interpretation of the statute as it presently exists.

[5]

"* * * [T]he privilege * * * consists mainly in an amorphous concept developed by case law. Originally the common law privilege protected only the identity of informers and secrets affecting the national security. In a few cases, however, under cover of the phrase 'public interest' the privilege has been extended to protect disclosure which would merely hamper 'efficient public service.' " Note, *Government Privilege Against Disclosure of Official Documents,* 58 Yale L J 993 (1949).

143-150. This privilege found its way into Oregon law with the enactment of what is presently codified as ORS 44.040(1)(e) in 1862. General Laws of Oregon, section 702, p 325 (Deady 1845-1864).

Since that date the statute has only been briefly mentioned in three cases: *State v. Morrow,* 158 Or 412, 75 P2d 737, 76 P2d 971 (1938); *State v. Ayer,* 122 Or 537, 259 P 427 (1927); and *State v. Yee Guck,* 99 Or 231, 195 P 363 (1921). *See also,* Hurley, *Privileged Communications in Oregon,* 36 Or L Rev 132, 156-57 (1957). None of these authorities offer much assistance in dealing with the terms "official confidence" or "public interest."

In short, we are here called upon to reconcile two statutes, one of which has never been interpreted by an Oregon appellate court, and the other of which has received little judicial attention.

Plaintiff argues he has a right to see the committee's report under the terms of ORS 192.030 because there is no *express* statutory exception to protect the confidentiality of the report. Plaintiff concedes there are numerous statutes expressly preserving the confidentiality of various public records,[9] but argues ORS 44.040(1)(e) is not such an express limitation.

Defendants, assuming that under ORS 44.040

---

[9] *See,* e.g.,

ORS 1.440 (records of proceedings at judicial fitness hearings)
ORS 7.211 (adoption records)
ORS 41.675 and 441.510 (limited access to hospital data, etc.)
ORS 107.600 (conciliation service records)
ORS 132.410 (grand jury indictments prior to arrest)
ORS 179.495 (medical records of patients at state institutions)
ORS 181.540 (crime records in the keeping of the state police)
ORS 314.835 and 308.290 (tax records and reports)
ORS 419.567 (juvenile court records)
ORS 483.610 (accident reports)

(1) (e) they would not have to testify as to the contents of the committee's report, argue it would be anomalous to allow public inspection under ORS 192.030. Defendants further contend that interpreting ORS 44.040 (1) (e) as a limitation on ORS 192.030 provides an appropriate balancing of the citizens' rights to have free access to public records and the government's right to be free from unreasonable interference in that disclosure would only be prevented in those cases where the public interest would suffer thereby.

There is authority which supports each party's position. Plaintiff's arguments draw substantial support from the strong public policy favoring public access to government records. "[F]reedom of information is now, by statute, the rule, and secrecy is the exception."⑦ *See, MacEwan v. Holm et al,* supra; Forkosch, *Freedom of Information in the United States,* 20 DePaul L Rev 1 (1971); Parks, *The Open Government Principle: Applying the Right to Know Under the Constitution,* 26 Geo Wash L Rev 1 (1957); Pickerell, *Secrecy and the Access to Administrative Records,* 44 Calif L Rev 305 (1956); Note, *Access to Official Information: A Neglected Constitutional Right,* 27 Ind L J 209 (1952).

In addition, although we have found no cases from other states which have interpreted statutes similar to those here in question in the manner plaintiff urges, there are cases which do point in that direction. In *New York Post Corporation v. Liebowitz,* 2 NY2d 677, 163 NYS2d 409, 415-16 (1957), the court stated:

"* * * Turning to section 66 of the Public

---

⑦ Wellford v. Hardin, 315 F Supp 768, 770 (D C 1970). The statute involved in that case was the federal Freedom of Information Act, 5 USC 552 (1964), but the quoted statement is equally true under the Oregon statutes.

Officers Law, the provision before us, there is no doubt that it expresses a strong legislative policy to make available to public inspection and access all records or other papers kept 'in a public office,' at least where secrecy is not enjoined by statute or rule. * * *"

Chief Judge Desmond of the New York Court of Appeals, dissenting in *New York Post Corporation v. Moses,* 10 NY2d 199, 219 NYS2d 7, 13 (1961), said:

"* * * It is in the public interest that such 'right to know' statutes be made usable wherever possible—that is, wherever there is no positive statutory law to the contrary."

The majority opinion in that case did not conflict with this statement. *See also, Caswell v. Manhattan Fire & Marine Insurance Co.,* 399 F2d 417 (5th Cir 1968) (applying Florida law).

The more substantial body of authority, however, seems to support the arguments of the defendants. For example, numerous California cases, interpreting a statute similar to ORS 192.030,[9] have adopted the position here urged by defendants.

"* * * [T]he right of a citizen to inspect public writings has been restricted by statute in a variety of situations * * *.

"To the many statutory exceptions the courts have added other exceptions which apply to situations not covered by statute. (See *Runyon v. Board etc. of Cal.,* 26 Cal. App.2d 183, 185 [79 P.2d 101] [letters and documents in possession of parole board] ; *Chronicle Publishing Co. v. Superior Court,*

---

[9] California Code of Civil Procedure, § 1892, provides:

"Every citizen has a right to inspect and take a copy of any public writing of this State, *except as otherwise expressly provided by statute.*" (Emphasis supplied.)

54 Cal.2d 548, 569 [7 Cal.Rptr. 109, 354 P.2d 637] [State Bar records in disciplinary proceedings]; *City & County of San Francisco v. Superior Court,* 38 Cal.2d 156, 161-162 [238 P.2d 581] [communication in official confidence] * * *.

"In *Runyon, supra,* the applicable rule is stated thusly: '[T]he courts have consistently declared that in another class of cases public policy demands that certain communications and documents shall be treated as confidential and therefore are not open to indiscriminate inspection, notwithstanding that they are in the custody of a public officer or board and are of a public nature * * *.

"In * * * [Bruce v. Gregory, 65 Cal2d 666, 56 Cal Rptr 265, 423 P2d 193], supra, the California Supreme Court, while recognizing that it is the policy of this state that public records and documents be kept open for public inspection in order to prevent secrecy in public affairs * * * held, nevertheless, 'that the rights created by * * * [the relevant statutes], are, by their very nature, not absolute, but are subject to an implied rule of reason.' * * *." *Craemer v. Superior Court,* 265 Cal App2d 216, 221-222, 71 Cal Rptr 193 at 197-99 (1968).

We note the *Craemer* court cites the case of *City and County of San Francisco v. Superior Court,* 38 Cal2d 156, 238 P2d 581 (1951), as an example of a court-created exception to the right to inspect government documents. That case could instead be read as holding that a testimonial privilege statute similar to ORS 44.040(1)(e) is an exception to California's "right to know" statute. In any event, as either an interpretation of the statutes or as a court-made rule, California authority is in accord with the position taken by defendants. Also, further supporting defendants, the attorney general has repeatedly expressed the

opinion that ORS 44.040(1)(e) is a limitation on ORS 192.030.[8]

It is, however, apparent that either party's position could be carried to a logical extreme that would produce undesirable results. Consider, for example, the government's privilege in general not to disclose the identity of an informer who has furnished information about violations of the law. *See*, e.g., *State v. Evans*, 1 Or App 489, 463 P2d 378, Sup Ct *review denied* (1970). If plaintiff's arguments prevailed, and if this information was maintained by the police in some written form, then presumably the public would be entitled to inspect it under the terms of ORS 192.030. On the other hand, if defendants' arguments prevailed, then government officials, always making the claim that documents are confidential, could erode most of the rights embodied in ORS 192.030. In California, where the courts have a restrictive attitude toward access to government documents, *MacEwan v. Holm et al*, supra, 226 Or at 47, this appears to be exactly what has happened.

■ We have reviewed the issue presented in unusual length because of its importance, its difficulty, and because the problem of public access to official information seems to be a recurring one for state agencies.[9] However, for purposes of the case at bar, we conclude it is not necessary to resolve it, and it is pos-

---

[8] *See*, e.g., 34 Op Att'y Gen 70 (1968); 34 Op Att'y Gen 306 (1968); and 32 Op Att'y Gen 218 (1964-1966).

[9] Over recent years the Attorney General has frequently been called upon for advice concerning public access to government documents. In addition to the opinions cited in nn 1 and 9, supra, *see*, 30 Op Att'y Gen 65, 354 (1960-1962); 31 Op Att'y Gen 100, 148, 155 (1962-1964); 33 Op Att'y Gen 57, 109, 192, 273, 388, 590 (1964-1966).

sible the legislative assembly will, in the near future, clarify its intent in this field. For, even assuming *arguendo,* that the official secrets privilege, ORS 44.040(1)(e), is a limitation on the right to inspect public records, ORS 192.030, the plaintiff is entitled to inspect the committee's report.

This conclusion is based primarily on burden-of-proof grounds. As previously noted, *MacEwan v. Holm et al,* supra, was decided before ORS 192.030 was enacted in its present form. However, we believe the part of that decision concerning burden of proof remains fully applicable:

> "In balancing the interests * * * the scales must reflect the fundamental right of a citizen to have access to the public records as contrasted with the incidental right of the agency to be free from unreasonable interference. * * * The citizen's predominant interest may be expressed in terms of the burden of proof which is applicable in this class of cases; *the burden is cast upon the agency to explain why the records sought should not be furnished.* Ultimately, of course, it is for the courts to decide whether the explanation is reasonable and to weigh the benefits accruing to the agency from nondisclosure against the harm which may result to the public if such records are not made available for inspection." (Emphasis supplied.) 226 Or at 46.

The defendants recognized that it was their burden to prove that ORS 44.040(1)(e) prevented the disclosure of the report by raising this issue in their pleading in the form of an affirmative defense. Defendants did not sustain their burden.

Defendants claim that the committee's report was received in official confidence and that the public interest would be impaired by its disclosure. These

are merely legal conclusions. In order for the courts
to determine whether these conclusions are warranted,
as we must, *MacEwan v. Holm et al,* supra, specific
evidence must be produced which explains how the
public interest would be impaired by disclosure. See,
*Beckon v. Emery,* 36 Wis2d 510, 153 NW2d 501 (1967);
*cf., State v. Lender,* 266 Minn 561, 124 NW2d 355
(1963).

As we understand the defendants' pleading, the
defendants advance three reasons why the public in-
terest would be impaired by disclosure of the report.
First, since Acting President Young promised the
committee members their report would be kept con-
fidential, it is in the public interest not to breach such
an agreement. Second, upholding the promise of con-
fidentiality is necessary in order for institutions of
higher education to be able to obtain similar evalua-
tions in the future. Third, disclosure of the report
would violate the rights of privacy of those university
officials discussed in the report. We discuss each of
these three claims separately.

■ If the promise of confidentiality were the end
of our inquiry, we would be allowing a state agency
official to effectively eliminate the public's rights
under ORS 192.030. Breach of this promise, when
required by the law of this state, is not a sufficient
harm to the public interest to prevent the report's
disclosure.

In this situation, as others, promises of confi-
dentiality cannot always be kept. Even something as
secret and sensitive as the identity of an informer
may, at times, have to be disclosed. *State v. Cortman,*
251 Or 566, 446 P2d 681, *cert denied* 394 US 951 (1968).
Also, material in welfare department files which is

expressly confidential by statute may, at times, have to be disclosed. *Chandler v. State,* 230 Or 452, 370 P2d 626 (1962).

The evidence does not support defendants' further claim that disclosure of the report would make it more difficult to get similar information in the future. Acting President Young testified that the practice of calling in a team of outside consultants to evaluate a school or department of a university was common, and that it was "handled different ways in different places over the country," i.e., with reports that are both confidential and not confidential. He also testified:

> "I think it is better not to have a confidential review of a department. I think in general it's better to have an open review with the review team talking directly to them, and then having a supplemental confidential report * * *."

Apparently, at least some universities have no difficulty obtaining this type of information and evaluation in the absence of an assurance of secrecy. Significantly, only one of the four educators asked to serve on the committee asked that the report be confidential, and there was no showing that an equally qualified educator who would have been willing to express his evaluations openly was not available.

■ Defendants' final assertion of confidentiality is based on the claim that the report contains personal information about university employes, the disclosure of which would invade those persons' rights of privacy. Defendants do not argue that rights of privacy attach to the actions of public officials such as university employes in the discharge of their duties. So the question becomes whether the report contains any

personal information about university employes, the disclosure of which would damage the "public interest."[20]

From all appearances in the record it does not. The only testimony concerning the contents of the report came from Acting President Young. He testified:

"Q. Does the report deal with Dean Ward's practices in making appointments in the School of Science?

"A. I don't believe there is a reference to — There are references to general policies and procedures, as we indicated here, and to standards and goals of the school. I don't believe there is a — I would have to take a look at the report again. I do not believe there is a critical comment concerning the practices in making appointments. There are some —

"Q. Does it deal with the practices of Dean Ward in making recommendations for appointment?

"A. I would say not — Well, all of this is dealt with in terms of the total policies, procedures and practices within the school. The only recollection I have in this area are some laudatory comments about efforts to raise standards and the review procedures in the school that does involve a review committee.

"⟨ ⟩ * *

"Q. Is there some criticism of you in the report?

"A. I would not say so specifically, no.

---

[20] We do not mean to suggest that even if the report contained highly personal information this alone would justify non-disclosure. Such a conclusion might be inappropriate if the personal information was relevant to the performance of the official duties of the persons named in the report.

"Q. Is there any criticism of Dean Nicodemus?

"A. I would say there's no criticism — There's comments, suggestions, on total operations of the university.

"Q. Are any of these comments with respect to Dean Nicodemus critical?

"A. No. I would say there are no specific critical comments regarding Dean Nicodemus.

"Q. Are there comments critical of Dean Ward?

"A. There are comments in the report as they go through the whole system. I don't know how far we go into getting into a confidential report."

At this point defendants' objections, which were consistently sustained by the trial court, cut off all further efforts to inquire concerning the contents of the report. However, from the limited record that was developed, it appears that the report is only about professional matters concerning the administration of the university, and contains nothing that might be considered personal information about university employes.

■ Although some claims of confidentiality might well be decided on the very nature of the documents sought,[20] in order for defendants to prove the report in the case at bar contained personal information about university employes, disclosure of which would damage the "public interest," it was necessary to establish the exact contents of the report. The proper procedure

---

[20] *Cf.*, Note, *Access to Official Information: A Neglected Constitutional Right*, 27 Ind L J 209, 210 (1951):

"* * * No court of law would permit national security to be jeopardized to satisfy the idle curiosity of a citizen regarding the number of atomic bombs in the United States' defense stockpiles. Conversely, no court should allow a public official arbitrarily to decide what facts the people have a right to know, when the only security involved is his position * * *."

in such cases has been suggested by the Supreme Courts of Wisconsin and Arizona:

"* * * [T]he proper procedure is for the trial judge to examine *in camera* the record or document sought to be inspected. Upon making such *in camera* examination, the trial judge should then make his determination of whether or not the harm likely to result to the public interest by permitting the inspection outweighs the benefit to be gained by granting inspection.

"In reaching a determination so based upon a balancing of the interests involved, the trial judge must ever bear in mind that public policy favors the right of inspection of public records and documents, and, it is only in the exceptional case that inspection should be denied. If * * * disclosure of only a portion [of a record] is found to be prejudicial to the public interest, the trial judge has the power to direct such portion to be taped over before granting inspection." *State ex rel. Youmans v. Owens,* 28 Wis2d 672, 682-83, 137 NW2d 470, 139 NW2d 241 (1965).

"* * * [The trial court should] require the * * * documents * * * in question to be produced in court for the private examination of the trial judge in order that the court may determine whether such * * * documents are confidential and privileged or whether their disclosure would be detrimental to the best interests of the state. In no other way can such questions be determined.

"Such * * * documents * * * after examination by the trial judge, should be ordered placed in an envelope under seal of the court with a proviso that such seal shall not be broken or the envelope opened by any unauthorized person but that the same shall be properly identified and held by the clerk of the court as a confidential record until further order of either the trial court or supreme court.

"If the trial court in the exercise of a sound dis-

cretion shall determine that such documents * * * are confidential or that an inspection thereof by the public would be detrimental to the best interests of the state the court should deny their inspection by the petitioner. On the other hand if it should determine that such documents * * * are not confidential or that a disclosure of their contents would not be detrimental to the best interests of the state the court should not hesitate to enter its order permitting their inspection and a disclosure of their contents." *Mathews v. Pyle,* 75 Ariz 76, 81, 251 P2d 893 (1952).

Whether such an *in camera* proceeding should include an opportunity for opposing counsel to examine the documents we need not now decide. *Compare United States v. Cotton Valley Operators Committee,* 9 FRD 719 (W D La 1949), *aff'd by equally divided court,* 339 US 940 (1950) (court to pass on privilege claim before allowing counsel to see documents), *with State ex rel v. Church,* 35 Wash2d 170, 211 P2d 701 (1949) (contra procedure approved). However, we note that *Chandler v. State,* 230 Or 452, 370 P2d 626 (1962), indicates that opposing counsel need not be afforded an opportunity to examine the documents.

In summary, even assuming without deciding that ORS 44.040(1)(e) is a limitation on ORS 192.030, defendants have failed to prove that the public interest would be impaired by the disclosure of the committee's report.[9] The evidence does not establish that keeping the promise of secrecy outweighs the citizens' rights to

---

[9] Even in California, which has adopted the rule defendant here urges, inspection has been permitted in those cases where the custodian of public records fails to prove the public interest would be harmed by disclosure. *See,* Terzian v. Superior Court, 10 Cal App3d 286, 88 Cal Rptr 806 (1970); Oceanside Union School Dist. v. Superior Court, 58 Cal2d 180, 23 Cal Rptr 375, 373 P2d 439 (1962).

know the contents of this public record. Nor does the evidence establish that it will be significantly more difficult to obtain similar information in the future, absent assurances of permanent secrecy.

Under the facts of this case, the only ground upon which defendants could conceivably justify non-disclosure of this public record is their claim that it contains "confidential personal information," the disclosure of which would damage the public interest. However, we interpret the testimony of Acting President Young, set out above, as specifically negating this contention. Therefore, no purpose would have been served by an *in camera* review in this instance.

The decree of the trial court is reversed, and the cause is remanded with directions to enter a decree directing the defendants to permit the plaintiff to inspect the committee's report, subject to such reasonable regulations as the defendants may impose to prevent interference with the discharge of their official duties.

Reversed and remanded with directions.