Argued November 3, 1976, affirmed March 17, 1977

AYERS, *Appellant,*
*v.*
LEE ENTERPRISES INCORPORATED et al,
*Respondents.*
(TC 29693, SC 24428)

561 P2d 998

Susan Elizabeth Reese and Nick Chaivoe, Portland, argued the cause and filed the briefs for appellant.

Paul R. Duden, Portland, argued the cause for respondents James Goodman, Wilbur L. Hockema and James Montgomery. On the brief with him were Barry M. Mount and Tooze, Kerr, Peterson, Marshall & Shenker, Portland.

Roderick L. Johnson, Corvallis, argued the cause for respondent Lee Enterprises Incorporated. With him on the brief were LaVerne M. Johnson and Thomas & Johnson, Corvallis.

Before Denecke, Chief Justice, and McAllister,* Holman, Tongue, Howell, Bryson and Bohannon, Justices.

TONGUE, J.

*McAllister, J., resigned December 31, 1976.

## TONGUE, J.

This is an action for damages by the victim of a rape for invasion of her right of privacy against Corvallis police officers who "revealed" her name and address and against a Corvallis newspaper which published "the facts" of the crime, including her name and address. Defendants demurred to the complaint. Plaintiff appeals from a judgment in favor of defendants, entered after their demurrers were sustained. We affirm.

The material allegations of plaintiff's amended complaint are as follows:

"III.

"That on or about the 20th day of June, 1973, Plaintiff was a victim of an infamous crime and reported the event to Defendants JAMES GOODMAN, WILBUR L. HOCKEMA and JAMES MONTGOMERY and requested that her privacy be preserved, and her name and address not be made public.

"IV.

"That thereafter, and on or about Saturday, June 23, 1973, the CORVALLIS GAZETTE TIMES on Page 17 published the facts of the infamous crime and published Plaintiff's name and address.

"V.

"That Defendants GOODMAN, HOCKEMA and MONTGOMERY acting collectively, or severally made the information of the aforesaid infamous crime available to Defendant LEE ENTERPRISES INCORPORATED, dba CORVALLIS GAZETTE TIMES.

"VI.

"That the acts of Defendants GOODMAN, HOCKEMA and MONTGOMERY acting collectively, or severally in revealing the information of the infamous crime, and the act of Defendant LEE ENTERPRISES INCORPORATED, dba CORVALLIS GAZETTE TIMES in publishing said information were outrageous and constituted an invasion of Plaintiff's privacy, and caused her to incur humiliation, shame, emotional distress and

mental anguish, and all to her general damage in the sum of $400,000.00. * * *"

At the outset, it is important to note that the date of the publication complained of by plaintiff, June 23, 1973, was prior to the effective date on July 1, 1973, of ORS 192.500, which provides that various public records shall be exempt from disclosure.

Defendants contend on this appeal that this case is not controlled by ORS 192.500, which did not become effective until July 1, 1973 (Oregon Laws 1973, ch 794, § 35), but by the provisions of statutes in effect as of June 23, 1973. Plaintiff contends, on the contrary, that she is entitled to the benefit of the exemption provided by ORS 192.500(1)(c) and that "defendants cannot be heard to argue that [it] was not, in fact, in effect at the time" because defendants "invoked" ORS 192.500(1)(c) in memoranda in support of their demurrers and because the trial court, as well as defendants, "proceeded" on the assumption that its provisions applied at that time and relied upon them in its decision sustaining the demurrers.[1]

Plaintiff cites no authorities in support of such contentions. On examination of the trial court file (which does not include any memoranda filed by the parties in the trial court) we note that prior to the filing of demurrers the defendants also filed motions to strike and to make more definite and certain. For all we know, plaintiff herself may have "invoked" the

---

[1] ORS 192.500(1)(c) provides:

"(1) The following public records are exempt from disclosure under ORS 192.410 to 192.500 unless the public interest requires disclosure in the particular instance:

"* * * * *

"(c) Investigatory information compiled for criminal law purposes, except that the record of an arrest or the report of a crime shall not be confidential unless and only so long as there is a clear need in a particular case to delay disclosure in the course of an investigation. Nothing in this paragraph shall limit any right constitutionally guaranteed, or granted by statute, to disclosure or discovery in criminal cases;

"* * * * *."

provisions of ORS 192.500(1)(c) in arguments on those motions prior to the filing of defendants' demurrers. Indeed, plaintiff contends on this appeal, as also apparently contended by her in the trial court, that her complaint "states a cause of action based on exemptions outlined in 192.500(1)and (2)," as well as a cause of action based on invasion of her common law right to privacy.[2]

■ Regardless, however, of which party or parties were responsible for misleading the trial court into the apparent belief that the provisions of ORS 192.500 were in effect at the time of the incident involved in this case and which parties "invoked" such provisions, we hold that the disposition of this case is controlled by the law, including statutes, in effect as of June 23, 1973, the date of the incident, and that the provisions of ORS 192.500 are not controlling in this case.

As of June 23, 1973, the latest and the controlling decision by this court on the subject of what were "public records" for the purposes of inspection was *MacEwan v. Holm et al*, 226 Or 27, 359 P2d 413 (1961). That case did not involve an action for invasion of privacy, but a demand by a citizen for inspection of a study by the State Board of Health of problems of nuclear radiation.

---

[2]On this appeal plaintiff relies not only upon ORS 192.500(1)(c), but also upon ORS 192.500(2)(b) and (c) which provided additional exemptions for:

"* * * * *

"(b) Information of a personal nature such as that kept in a personal, medical or similar file, if the public disclosure thereof would constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance. The party seeking disclosure shall have the burden of showing that public disclosure would not constitute an unreasonable invasion of privacy.

"(c) Information submitted to a public body in confidence and not otherwise required by law to be submitted, where such information should reasonably be considered confidential, the public body has obliged itself in good faith not to disclose the information, and when the public interest would suffer by the disclosure:

"* * * * *."

At that time ORS 192.010 provided (as it still provides) that:

"Every citizen of this state has a right to inspect any public writing of this state, except as otherwise expressly provided by statute."

In addition, ORS 192.030 then provided as follows:

"All officers having custody of any state, county, school, city or town records shall furnish proper and reasonable opportunities for inspection and examination of *records and files* in their respective offices, and reasonable facilities for making memoranda or abstracts therefrom, during the usual business hours, to all persons having occasion to make examination of them for any lawful purpose. The custodian of the records and files may make reasonable rules and regulations necessary for the protection of the records and files and to prevent the interference with the regular discharge of the duties of such officers."[3] (Emphasis added)

In holding that the plaintiff in that case was entitled to inspect such records this court, although recognizing (at 46) that "ORS 192.010 and 192.030 are susceptible to a construction narrower than that which we have given them," this court held (at 48) that "the public interest will best be served by giving the term 'records and files' a broad construction" and (at 43) that:

"* * * For the purpose of deciding whether a writing is subject to public inspection, we regard all data gathered by the agency in the course of carrying out its duties, irrespective of its tentative or preliminary character, as falling within the definition of 'records and files.' * * *"

The court went on to hold, however (at 48), that there may be "circumstances justifying nondisclosure" and (at 45):

---

[3] At that time ORS 43.010 provided the only statutory definition of "public writing," as follows:

"Public writings are the written acts, or records of the acts, of the sovereign authority, official bodies and tribunals and public officers, legislative, judicial and executive, of this state, the United States, a sister state or a foreign country."

"In determining whether the records should be made available for inspection in any particular instance, the court must balance the interest of the citizen in knowing what the servants of government are doing and the citizen's proprietary interest in public property, against the interest of the public in having the business of government carried on efficiently and without undue interference. * * *"[4]

*MacEwan* was decided on February 1, 1961. Later that same year the Oregon legislature amended the statute by adding ORS 192.005(5), defining "public records" for the purpose of that statute. (Oregon Laws 1961, ch 160, § 2.)[5] At the same time, the legislature amended ORS 192.030, relating to the duty of custodians of records to permit the inspection of such records by adding the words "unless otherwise expressly provided by statute" (Oregon Laws 1961, ch 160, § 4), among other changes.[6] It does not appear from the

---

[4]The court did not specifically discuss the provision in ORS 192.010 permitting inspection of public writings "except as otherwise expressly provided by statute."

[5]ORS 192.005(5) then provided as follows:

"* * * * *

"(5) 'Public record' means a document, book, paper, photograph, file, sound recording or other material, regardless of physical form or characteristics, made in pursuance of law or in connection with the transaction of public business, whether or not confidential or restricted in use. 'Public records' includes correspondence, public records made by photocopying and public writings, but does not include:

"(a) Records of the Legislative Assembly, its committees, officers and employes.

"(b) Library and museum materials made or acquired and preserved solely for reference or exhibition purposes.

"(c) Extra copies of a document, preserved only for convenience of reference.

"(d) A stock of publications."

That section was subsequently amended by Oregon Laws 1965, ch 302 § 1.

[6]ORS 192.030, as amended, provides as follows:

"The custodian of any public records of the state or a political subdivision, *unless otherwise expressly provided by statute,* shall furnish proper and reasonable opportunities for inspection and examination of the records in his office and reasonable facilities for making memoranda or abstracts therefrom, during the usual business hours, to all persons having occasion to make examination of them. The custodian of the records may make reasonable rules and regulations necessary for the protection of the records and to prevent interference with the regular discharge of his duties." (Emphasis added)

legislative history of these amendments, however, that they were motivated by or otherwise related to the decision by this court in *MacEwan.* In any event, this was the state of the law on the subject of inspection of public records in Oregon as of June 23, 1973, the date of the incident involved in this case.

In deciding whether, upon application of that law to the facts alleged in plaintiff's complaint, the police record of plaintiff's name and address was a "public record," open to public inspection and subject to publication by a newspaper, we must next consider defendants' contention that plaintiff's complaint did not allege that she was the victim of a rape, but that she was "a victim of an infamous crime."

Plaintiff responds with the contention that she "necessarily refrained from disclosing in her complaint that she had been the victim of a rape" so as to avoid "any inferences that she might be republishing this information"; that although defendants had moved to make her complaint more definite and certain, those motions were denied (with one exception) and that "[t]here were no appeals to this ruling, and defendants may not now claim its inadequacy."

Plaintiff cites no authority in support of her contention that in such an action for invasion of privacy it was "necessary" for her to refrain "from disclosing in her complaint that she had been the victim of a rape" to avoid "any inference" of "republication." It also appears from the trial court file that there was a defense motion for "an order requiring that the plaintiff make the words 'infamous crime' * * * more definite and certain by setting forth the specific crime of which plaintiff was allegedly a victim." That motion was apparently opposed by plaintiff and was over-ruled. Because, however, defendants' demurrers were subsequently sustained there was no reason for either defendant to appeal from that ruling. On the contrary, when plaintiff resisted that motion and chose to stand on her complaint alleging only that she was a victim of

an "infamous crime," defendants were entitled to demur on the ground that this allegation, among others, was insufficient to state a cause of action for invasion of plaintiff's right of privacy.

"Infamous crimes" include any crime which is subject to punishment by imprisonment in the state penitentiary, including, for example, such crimes as burglary.[7] Plaintiff does not deny that a police record of the name and address of the victim of at least some "infamous crimes" would be a "public record" available to public inspection and publication. Indeed, plaintiff says in her reply brief on this appeal that her "status as the victim of a rape" is one of "two critical elements in her claim for invasion of privacy." Plaintiff contends that there are special circumstances involving the victim of a rape which provide good reasons why the public policy of Oregon should require police officers to withhold at least the immediate release of her name and address.[8]

We are understanding of these problems and of the reasons why the victim of a rape who reports that crime to the police with the request that her name not be made public would feel justifiably aggrieved at the release and publication of her name and address when, at the same time the names of juvenile criminals are protected by statute from public disclosure. See ORS 419.567. We also recognize the seriousness of the questions presented by these problems under the terms of the "exemptions" now provided by ORS 192.500, effective as of July 1, 1973.

■ We hold, however, that under our decision in *MacEwan* and under the terms of ORS 192.010 and 192.030 as they existed as of June 23, 1973, a police

---

[7] *See Fehl v. Jackson County,* 177 Or 200, 204, 161 P2d 782 (1945), and 24 ALR 1002, 1004 (1923).

[8] In support of such contentions plaintiff cites, among other authorities: Amir, Patterns of Forcible Rape (1971); Brownmiller, Against Our Will: Men, Women and Rape (1975); and Griffin, Rape: The All American Crime, Ramparts, September 1971, at 26.

report showing the name and address of the victim of any "infamous crime," including rape, was a "public record" and was not then exempt from inspection.

Indeed, plaintiff states in her brief on this appeal that:

"* * * Admittedly, 'freedom of information is now, by statute, the rule, and secrecy is the exception.' [Citations omitted] Nonetheless, the exceptions to this freedom of information, as defined by Oregon law, seem clearly to prohibit the publication of plaintiff's name and address as the victim of a rape."

In support of that contention, however, plaintiff relies solely upon the provisions of ORS 192.500, which was not yet in effect at the date of the incident involved in this case.[9]

■ It follows, in our opinion, that plaintiff's complaint failed to allege sufficient facts to constitute a cause of action for damages for invasion of her right to privacy. The Supreme Court of the United States, in *Cox Broadcasting Corp. v. Cohn,* 420 US 469, 493-94 (1975), approved the following rule as stated in the Comment *c* to Tentative Draft No. 13 of the Second Restatement of Torts 114, § 652D (April 17, 1967):

" 'There is no liability [in an action for breach of privacy] when the defendant merely gives further publicity to information about the plaintiff which is already public. Thus there is no liability for giving publicity to facts about the plaintiff's life which are matters of public record * * *.' "

---

[9]It is also to be noted that plaintiff makes no contention, and perhaps for good reason, that the police were required to withhold the release of her name and address because of the privilege provided at that time by ORS 44.040(1)(e), which then provided that:

"(1) There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases:

"* * * * *

"(e) A public officer shall not be examined as to communications made to him in official confidence, when the public interest would suffer by the disclosure.

"* * * * *"

*Cf. Papadopoulos v. St. Bd. of Higher Ed.,* 8 Or App 445, 494 P2d 260 (1972).

We also approve and adopt that rule.[10] Because, as previously held, it appears from the facts alleged on the face of plaintiff's complaint that her name and address, as reported by her to the police, then became a matter of "public record," so as to be available to public inspection, the trial court did not err in sustaining defendants' demurrers to that complaint, even if the trial court did so under the impression that ORS 192.500 was in effect at the time of the incident involved in this case.

Affirmed.

[10] *See also* Prosser, Law of Torts 810-11, § 117 (4th Ed 1971).

It does not necessarily follow, however, that we would hold that the decision in *Cox Broadcasting Corp. v. Cohn,* 420 US 469 (1975), would require a holding, on constitutional grounds, that the various "exemptions" now provided under ORS 192.500 are invalid. *Cox* involved the validity of a state law forbidding publication by a newspaper of the name and address of a rape victim where those facts appeared in public court records, not the validity of a state statute, such as ORS 192.500, which is claimed to "exempt" such facts from disclosure by the police authorities.

Indeed, the U.S. Supreme Court specifically noted that the question of "access" remained open:

"We mean to imply nothing about any constitutional questions which might arise from a state policy not allowing access by the public and press to various kinds of official records, such as records, such as records of juvenile court proceedings." 420 US at 496 n.26.

For reasons previously stated, that constitutional question is not before the court in this case. Also, because of the basis on which we decide this case, we do not reach the question whether the "publication" complained of by plaintiff's complaint was otherwise "privileged."